Stevie J. Stevenson
_____
FULL NAME

_____
COMMITTED NAME (if different)

Centinela State Prison
_____
FULL ADDRESS INCLUDING NAME OF INSTITUTION
2302 Brown Road, Imperial, Ca. 92251
_____

K-16324
_____
PRISON NUMBER (if applicable)

FILED
CLERK U.S DISTRICT COURT

MAY – 4 2017

CENTRAL DISTRICT OF CALIFORNIA
BY

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

Stevie J. Stevenson

   Los Angeles District Attorney's PLAINTIFF,
Los Angeles County;  v. Office
Los Angeles Superior Court Judge Craig
Richman, Los Angeles District Attorney's
Office Corene Locke-Noble,et al DEFENDANT(S).
James S. Bisnow, attorney

CASE NUMBER **CV17-03367**-CJC(JC)
*To be supplied by the Clerk*

## CIVIL RIGHTS COMPLAINT
PURSUANT TO *(Check one)*
☒ 42 U.S.C. § 1983
☐ Bivens v. Six Unknown Agents 403 U.S. 388 (1971)

## A. PREVIOUS LAWSUITS

1.  Have you brought any other lawsuits in a federal court while a prisoner: ☒ Yes  ☐ No

2.  If your answer to "1." is yes, how many? _____**1**_____

    Describe the lawsuit in the space below. (If there is more than one lawsuit, describe the additional lawsuits on an attached piece of paper using the same outline.)

(a) On December 12, 2016, a 42 USC §1983 civil lawsuit was filed against the Secretary of the California Department of Corrections and Rehabilitation et al., for stopping the order of ALL law books, changing the law system from West Law to Lexis (saying that both systems were EQUIVALENT) when they were not, for limiting legal research from 2 hours a week to 30 minutes a week of that; th eprison mailroom opened confidential legal work product (affidavits, declarations documents) and took them, opening up legal confidential mail out of Plaintiff's presence, preventing Plaintiff from mailing out legal confidential mail to courts, attorneys, not allowing Plaintiff law books from circulating law librayr to conduct research with and for refusing to allow audio discs for criminal case when other inmates can have theirs.

Case name: Stevenson v. Jeffrey Beard, Secretary CDCR et al., Case No: 3:16-cv-03079-JLS-PCL

(b) Sometime in 2010, PLaintiff filed a lawsuit against a Correctional Officer for Retaliation and Battery in the Imperial County Superior Court. Upon request of the Attorney General and not Plaintiff's the lawsuit was removed from the State Court to the Federal Court United States District Court, Eastern District of California, case number 1:10-cv-01401 AWI-DLB.

RECEIVED
CLERK U.S. DISTRICT COURT

APR 2 8 2017

CENTRAL DISTRICT OF CALIFORNIA
BY                        DEPUTY

a. Parties to this previous lawsuit:
   Plaintiff   Stevie J. Stevenson et al.,

   Defendants   Jeffrey Beard, PHD Secretary CDCR; Scott Kernan, Undersecretary/
   Secretary CDCR; Shannon Swain, Acting Superintendent Education; R. Madden Warden
   et al.,

b. Court   U.S. District Court, Southern District of California (San Diego)

c. Docket or case number   3:16-cv-03079-JLS-PCL

d. Name of judge to whom case was assigned   Janis L. Sammartino; Magistrate Peter C. Lewis

e. Disposition (For example: Was the case dismissed? If so, what was the basis for dismissal? Was it
   appealed? Is it still pending?)   Still Pending

f. Issues raised:   Denial of Due Process for stopping order of ALL LAW BOOKS in CDCR;
   changing law system on computers from West-Law to Lexis-Nexis saying two systems
   were EQUIVALENT when they're not, limiting research form 2 hrs a week to 30 mins

g. Approximate date of filing lawsuit:   December 19, 2016

h. Approximate date of disposition   N/A

## B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

1. Is there a grievance procedure available at the institution where the events relating to your current complaint
   occurred? ☐ Yes   ☐ No

2. Have you filed a grievance concerning the facts relating to your current complaint? ☐ Yes   ☐ No

   If your answer is no, explain why not _____

   _____

   _____

3. Is the grievance procedure completed? ☐ Yes   ☐ No

   If your answer is no, explain why not _____

   _____

4. Please attach copies of papers related to the grievance procedure.

## C. JURISDICTION

This complaint alleges that the civil rights of plaintiff _____
(print plaintiff's name)

who presently resides at _____,
(mailing address or place of confinement)

were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at

_____
(institution/city where violation occurred)

a. Parties to this previous lawsuit:
Plaintiff _Stevie J. Stevenson_

Defendants _Brian Kellums, Correctional Officer_

b. Court _United States District Court, Eastern Division_

c. Docket or case number _1:10-CV-01401_

d. Name of judge to whom case was assigned _Dennis L. Beck_

e. Disposition (For example: Was the case dismissed? If so, what was the basis for dismissal? Was it appealed? Is it still pending?) _Settled_

f. Issues raised: _Retaliation; Battery upon Inmate_

g. Approximate date of filing lawsuit: _N/A_

h. Approximate date of disposition _Unknown_

## B. EXHAUSTION OF ADMINISTRATIVE REMEDIES

1. Is there a grievance procedure available at the institution where the events relating to your current complaint occurred? ☐ Yes   ☐ No

2. Have you filed a grievance concerning the facts relating to your current complaint? ☐ Yes    ☐ No

   If your answer is no, explain why not _____

3. Is the grievance procedure completed? ☐ Yes    ☐ No

   If your answer is no, explain why not _____

4. Please attach copies of papers related to the grievance procedure.

## C. JURISDICTION  The Court has supplemental jurisdiction over Plaintiff's state law claims under Title 28 U.S.C. §1367.

This complaint alleges that the civil rights of plaintiff _Stevie J. Stevenson_
(print plaintiff's name)

who presently resides at _2302 Brown Road, Imperial, Ca. 92251; Centinela State Prison_,
(mailing address or place of confinement)

were violated by the actions of the defendant(s) named below, which actions were directed against plaintiff at
_Los Angeles Superior Court, 210 W. Temple Street, Dept #120, LA, Ca. 90012-3210_
(institution/city where violation occurred)

CIVIL RIGHTS COMPLAINT

3.

on (date or dates) <u>12-21-2015</u>        <u>1-15-2015</u>        November 2015
                    (Claim I)               (Claim II)              (Claim III)

**NOTE:**    You need not name more than one defendant or allege more than one claim. If you are naming more than
             five (5) defendants, make a copy of this page to provide the information for additional defendants.

1.  Defendant    <u>Criag Richman, Judge</u>                                    resides or works at
                 (full name of first defendant)
                 <u>Los Angeles Superior Court, 210 W. Temple St, Dept #120, LA, Ca. 90012</u>
                 (full address of first defendant)
                 <u>Judge</u>
                 (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual  ☒ official capacity.

Explain how this defendant was acting under color of law:
<u>Employed by the County of Los Angeles as a Superior Court Judge</u>

2.  Defendant    <u>Corene Locke-Noble</u>                                    resides or works at
                 (full name of first defendant)
                 <u>340 West Temple Street, Rm #540, Los Angeles, Ca. 90012</u>
                 (full address of first defendant)
                 <u>Deputy District Attorney, State Bar Number 97690</u>
                 (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual  ☒ official capacity.

Explain how this defendant was acting under color of law:
<u>Employed by the County of Los Angeles as a Deputy District Attorney</u>

3.  Defendant    <u>James S. Bisnow</u>                                    resides or works at
                 (full name of first defendant)
                 <u>117 East Colorado Blvd., Suite #600, Pasadena, Ca. 91005</u>
                 (full address of first defendant)
                 <u>Attorney, State Bar Number 65224</u>
                 (defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☒ individual  ☒ official capacity.

Explain how this defendant was acting under color of law:
<u>Employed by the County of Los Angeles as an attorney appointed by the</u>
<u>ICDA</u>

**4.**

---

**CIVIL RIGHTS COMPLAINT**

CV-66 (7/97)                                                                Page 3 of 6

4. Defendant    Jackie Lacey
                                                           resides or works at
(full name of first defendant)
   211 W. Temple Street, Suite #1200, Los Angeles, Ca. 90012
(full address of first defendant)
   District Attorney Los Angeles County
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual   ☒ official capacity.

Explain how this defendant was acting under color of law:
   Employed by the County of Los Angeles as the District Attorney

5. Defendant    Zeke Perlo
                                                           resides or works at
(full name of first defendant)
   1055 W. 7th Street, Suite #2700, Los Angeles, Ca. 90017
(full address of first defendant)
   LA County Bar Director of the Indigent Criminal Defense Appointments Office
(defendant's position and title, if any)

The defendant is sued in his/her (Check one or both): ☐ individual   ☒ official capacity.

Explain how this defendant was acting under color of law:
   Employed by the Los Angeles County Bar as the Director of the Indigent
   Criminal Defense Appoinments Office

## D. CLAIMS*

### CLAIM I

The following civil right has been violated:

Plaintiff was denied due process under the Fourteenth Amendment to the United States Constitution as a result of Defendant Craig Richman depriving PLaintiff of his Liberty Interest in utilizing state law entitlement §1054.9 to request discovery and to submit a pitchess and brady motion with supporting documentation  as afforded defendants similarly situated and sentenced to Life Without the Possibility Parole and to be self-represented during the 1054.9 proceedings as other defendants similarly situated are allowed to utilize as an aid with preparing a petition for writ of habeas corpus or after one has been filed, or after a motion to vacate the judgment has been submitted.

Supporting Facts:  Include all facts you consider important.  State the facts clearly, in your own words, and without citing legal authority or argument.  Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to violate your right.

1. On January 1, 2003, the California Legislature added section §1054.9 to the Penal Code. (Stats.2002, ch. 1105, §1, enacting Sen Bill No. 1391 (2001-2002 Reg. Sess.) (Senate Bill 1391) PC1054.9 subdivision(a) states: "Upon the prosecution of a postconviction writ of habeas corpus or a motion to vacate a judgment in a case in which a sentence of death or of life in prison without the possibility of parole has been imposed and on a showing that 'good faith' efforts to obtain discovery materials from trial counsel were made and were unsuccessful, the Court **SHALL** except as provided in subdivision (c), order that the **DEFENDANT** be provided reasonable access to any of the materials described in subdivision (b)." PC1054.9 subdivision(b) states: "For purposes of this section, 'discovery materials' means materials in the possession of the prosecution and law enforcement authorities to which the same **DEFENDANT** would be entitled to at time of trial." This state law entitlement had

*If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same outline.*

Civil Rights Complaint
CLAIM I CONTINUED

created a "Liberty Interest" that is protected and guaranteed by the Due Process Clause of the 14th Amendment. Hicks v. Oklahoma, 447 U.S. 343(1980)

In 2004 the California Supreme Court in In re Steele, interpreted §1054.9 as follows: "[W]e interpret 1054.9 to require the trial court, on a proper showing of a good faith effort to obtain the materials from trial counsel, to order discovery of specific materials currently in the possesion of the prosecution or law enforcement authorities involved in the investigation or prosecution of the case that the **DEFENDANT** can show either(1) the prosecution did provide at time of trial but have since been lost to the **DEFENDANT**; (2) the prosecution should have provided at time of trial because they came within the scope of a discovery order the trial actually issued at that time, a statutory duty to provide discovery or the constitutional duty to disclose exculpatory evidence; (3) the prosecution should have provided at time of trial because the defense specifically requested them; or (4) the prosecution had no obligation to provide at time of trial absent a specific request, but to which the **DEFENDANT** would have been entitled at time of trial had the **defendant** specifically requested them." Steele, 32 Cal.4th 682, 697 (2004) The Steele Court also recognized that §1054.9 provided a vehicle for obtaining discoverable items that may have been improperly withheld by the prosecution when it stated: "[T]he reports do not mention other problems such as the possibility that prosecutors did not fulfill their duty to provide discovery." ... Steele, Id at 694

In 2006 the Second Appellate District in Hurd v. Superior Court, 50 Cal.Rptr.3d 893 (Cal.App. 2 Dist 2006) held that PC1054.9 authorizes a pre habeas corpus motion for discovery from a Police Officer's personnel records pursuant to Pitchess v. Superior Court, 11 Cal.3d 531, 537-538 (1974); California Evidence Code Sections 1043-1045.

In 2010, the Third Appellate District in Burton v. Superior Court, 105 Cal.Rptr.3d 604, 605 (Cal.App. 3 Dist 2010) stated: "There's no statutory requirement that a **DEFENDANT** be represented by an attorney at the time he [she] pursuaes a section PC1054.9 motion." The Court continued by stating: "[N]othing in the language of section 1054.9 limits the statute to **DEFENDANTS** who are currently represented by counsel Rather subdivision(a) of section 1054.9 provides that if conditions are satisfied, 'the court **SHALL** ... order that **THE DEFENDANT**' be provided reasonable access to any materials described in subdivision (b). There

2. On August 9, 2012, Plaintiff Stevie J. Stevenson filed a PC §1054.9 motion for postconviction discovery without requesting the appointment of counsel. (Exhibit #1) This motion was filed as a result of Plaintiff receiving new evidence that a prosecution witness, Tracey Gosha, was threatened with a 20 year prison term and placement of her son in foster care if she didn't tell the police what they wanted to hear. (Exhibit #2) Ms. Gosha stated that the police told her statements and that she just agreed with those statements out of fear of losing her son.

3. On or around October 5, 2013, Plaintiff received an affidavit from

Civil Rights Complaint
CLAIM I CONTINUED


Kevin Richardson (co-defendant) recanting his testimony stating that
he lied on Plaintiff due to his life and that of his family being
threeatened by the men who actually committed the crime for which
Plaintiff is serving his life without parole sentence. (Exhibit #3)

4. On or around November 17, 2013, Christa Hohmann, appointed by the
Court for the §1054.9 proceeding, provided Plaintiff with the discovery
material disclosed by the Los Angeles District Attorney's Office.
(Exhibit #4) Upon reviewing the items of discovery provided by the
LADA's Office, Plaintiff determined that those items mirrored the items
of discovery that was provided to his trial attorney John J. Cheroske
in 1992, before his trial.

5. In February 1992, Plaintiff's trial attorney filed a detailed motion
for discovery material. (Exhibit #5) In 1994, after Plaintiff's direct
appeal and first petition for writ of habeas corpus were denied his
appellate attorney Ivy Kessel received Plaintiff's attorney's trial
file. (Exhibit #6 ¶4-5) The items of discovery provided by the LADA's
Deputy Patricia Wilkinson consisted of the items listed in Exhibit
#7.

   A look at exhibits #7 (provided in 1992) and exhibit #4 (provided
in 2013) shows that both list mirror one another with the exception
of points 11, 15 & 17 which were never provided to Plaintiff's trial
attorney in exhibit #7.

5. In January of 2015, a LaMount Johnson, brother of LaTanya Johnson
(prosecution witness) stated in a signed affidavit that his sister
told him that she was grabbed by the neck, choked and slammed up against
a metal garage door while being questioned during her arrest. Mr.
Johnson stated that his sister LaTanya told him that while she was
at the police station she was threatened with more physical harm and
a life sentence if she didn't say what she was told by the police.
(Exhibit #8)

6. In January of 2015, Plaintiff's family obtained two civil lawsuits
Los Angeles Superior Court case numbers #BC002201 & #BC020272 and a
Log number to a Los Angeles Police Department Personnel Complaint
Internal Affairs IA #90-469M. (Exhibits #9, #10 & #11) Held within
the lawsuits were allegations by Ms Johnson (prosecution witness) and
three others Donald Manuel, Denise Manuel and Diane Manuel that they
were physically assaulted battered and threatened while being arrested
by the LAPD.

   Held within the lawsuits were the names of LAPD Officers who were
involved in the physical assault of Ms. Johnson and The Manuels. One
name of utter importance was that of lead investigator LAPD RHD
detective Norman Jackson #15526. (Exhibit #12)

   Also found in the lawsuit was an award of arbitrator that showed
on July 8, 1992, just 21 days before Plaintiff's July 29, 1992, trial
an arbitrator ruled in favor of Ms. Johnson and The Manuels. (Exhibit #13)

Civil Rights Complaint
CLAIM I CONTINUED

7. Plaintiff reviewed all of the items of discovery in exhibit #7 that
was disclosed to his trial attorney in 1992 and determined that there
were many items of discovery that were missing. Point 1 within
exhibit #7 was an LAPD follow-up report prepared by lead investigators
Norman Jackson #15526 and Larry Hedwall #20619. Point 1 is enclosed
as exhibit #14 and on page 2 of exhibit #14 detectives Jackson and
Hedwall describe the arrest of Ms. Johnson and The Manuels.

   Detectives Jackson and Hedwall documented that the Special Investigation
Section (SIS) along with the Speacial Weapons and Tactics (SWAT) team
arrested The Manuels and Ms. Johnson with them. Plaintiff looked into
the (SIS) and determined that the SIS specialized in ALL kidnap money
exchanges and was a unit that was known for unethical conduct. (Exhibit
#15, #15A & #15B)

8. On or about January 15, 2015, Plaintiff through attorney Christa
Hohmann submitted an informal request for 192 items of discovery that
was never provided by the LADA's Office. (Exhibit #16)

9. Plaintiff determined that many reports from Officers in Los Angeles
and San Diego were never provided nor were the identities of the SIS
detectives divulged, therefore he prepared a "Pitchess & Brady" motion
and asked that Christa Hohmann file a pitchess motion to which she
refused.

10. On February 25, 2015, Deputy District Attorney Corene Locke-Noble
responded to the January 15, 2015, informal request for 192 items of
discovery and refused to provide **ANY** discovery material. (Exhibit #17)

11. On or about February 2, 2015, Plaintiff submitted a declaration
with exhibits #10-#13 apprising Judge Craig Richman that the lead inves-
tigators in his case were involved in the assault and battery of suspects
and that the prosecution covered that information up. (Exhibit #18)

12. Due to attorney Hohmann's refusal to file a pitchess motion a conflict
arose which led to her withdrawing from Plaintiff's §1054.9 motion.
on July 8, 2015.

13. On July 8, 2015, attorney Judith Rochlin was appointed as counsel,
however, on September 29, 2015, Ms. Rochlin withdrew from the case
due to family illness. (Exhibit #19)

14. On October 29, 2015, Plaintiff filed a motion to compel discovery
to the Los Angeles Superior Court. (Exhibit #20)

15. On November 6, 2015, attorney James S. Bisnow was appointed to
represent Plaintiff.

16. On or about November 7, 2015, Plaintiff's wife contacted attorney
Bisnow in order to set up a time she could provide Bisnow with Plaintiff's
legal material.

17. On or about November 9, 2015, Bisnow called Mrs. Misty Stevenson

Civil Rights Complaint
CLAIM I CONTINUED

and immediately said "is this guy [Stevie/Plaintiff] playing games
because I spoke to the district attorney who said that this guy is
playing games." Bisnow then told Mrs. Stevenson that he does not have
time for games and in order for her husband [Plaintiff] to receive
his 1054.9 discovery, he [Plaintiff] needs to prove to him [Bisnow]
that he is innocent. Bisnow went on to tell Mrs. Stevenson that he
had no intentions of listening to a "jailhouse lawyer." (Exhibit #21
¶3-4)

18. On or about November 10, 2015, after being told what Bisnow stated
to his wife Plaintiff called Bisnow to discuss his case and the dis-
respect towards his wife. During that conversation Bisnow told Plaintiff
that he was just another GUILTY inmate bothering both the courts and
district attorney asking for discovery, that if it was up to him he
would not give Plaintiff ANY discovery. In response to that conversation
Plaintiff wrote Bisnow a letter.

19. On or about December 13, 2015, during another conversation Bisnow
told Plaintiff that he must have flunked out of school because his
English wasn't too good. Plaintiff wrote Bisnow a letter and carbon
copied one to Judge Criag Richman. (Exhibit #22)

20. On December 21, 2015, Plaintiff filed a motion to discharge Bisnow
which was denied by Judge Craig Richman. (Exhibit #23)

21. On or about January 10, 2016, Plaintiff wrote Bisnow a detailed
letter explaining what he wanted filed in concerns to his discovery
request and pitchess motion for an in camera review of the personnel
records of officers from the LAPD and SDPD. (Exhibit #24) In addition
Plaintiff specifically requested that Bisnow not file ANYTHING to the
court without his approval.

22. On or about February 3, 2016, attorney Venita Ray, author of
exhibit #2, contacted attorney Bisnow to discuss the status of Plaintiff's
discovery proceeding. During that conversation Mr. Bisnow made
disparaging remarks about Plaintiff's perspective of the case and
openly questioned the need for all of the documents Plaintiff had
directed him to obtain. Bisnow referred to Plaintiff as a "jailhouse
lawyer" who lacked real world understanding of the law. (Exhibit #25)

23. On or about February 14, 2016, Plaintiff filed a complaint to the
Indigent Criminal Defense Appointments Chairperson Zeke Perlo and
explained the problems he was having with attorney Bisnow and asked
that Bisnow be removed from his case. (Exhibit #26)

24. On February 24, 2016, Plaintiff wrote Judge Richman asking that
Bisnow be taken off of his case due to the problems and conflict that
hindered Plaintiff's ability to ask for certain discovery material.
(Exhibit #27)

25. On March 15, 2016, Bisnow sent Plaintiff a copy of a draft motion
for discovery that "Bisnow" planned to file. (Exhibit #28)

Civil Rights Complaint
CLAIM I CONTINUED

26. On March 16, 2016, Plaintiff wrote Judge Richman a letter requesting to file his own "Pitchess & Brady" motion. (Exhibit #29)

27. On or about March 21, 2016, Plaintiff, after reviewing the inept discovery request prepared by Bisnow telephoned Bisnow in order to discuss his reasoning for failing to request all of Plaintiff's request as exhibited in exhibit #16. Bisnow told Plaintiff that due to the Judge not removing him from the case he could do what he wanted, that due to Plaintiff having Life Without the POssibility of Parole Plaintiff had NO SAY SO in the §1054.9 proceeding. When Plaintiff further questioned Bisnow about not asking for all of his discovery Bisnow hung the phone up in Plaintiff's face.

28. On March 24, 2016, Plaintiff wrote Bisnow a letter again directing him to request ALL of his discovery material that he specifically prepared. (Exhibit #30)

29. On March 25, 2016, Plaintiff wrote an attorney complaint to Judge Richman, Judge William Ryan and Zeke Perlo, Chairperson of the ICDA. (Exhibit #31) In addition to the attorney complaint letter Plaintiff filed a complaint with the State Bar against attorney James S. Bisnow. (Refer to case #16-12806)

30. On April 6, 2016, Plaintiff filed a motion to Amend January 2016 list of discovery presented by Attorney James S. Bisnow for this §1054.9 proceeding. Plaintiff presented to the Court that the discovery request submitted by Bisnow did not represent the items that he had been requesting since 2012. (Exhibit #32)

31. On April 23, 2016, Bisnow sent Plaintiff a letter stating that the Court authorized him to file a "Hurd" motion (Pitchess & Brady) and asked that Plaintiff send him his draft motion. (Exhibit #33)

32. On or about April 30, 2016, in response to Bisnow's 4-23-2016 letter, Plaintiff sent Bisnow a very detailed "Pitchess & Brady" motion with supporting documentation that included exhibits #2, #4-#18 and provided him with a specific discovery request with supporting documents, (Exhibits #34 & #35), and asked that his request be submitted to the Court.

33. On May 2, 2016, Plaintiff sent a letter to Judges Craig Richman and William Ryan and to Zeke Perlo the Chairperson for the ICDA stating that there was a conflict of interest between him and attorney Bisnow and Plaintiff requested to be self represented. (Exhibit #36)

34. Sometime in May of 2016, due to Plaintiff being locked out of his §1054.9 proceeding where he could not represent himself or submit his specific discovery request or pitchess motion, he wrote California Senator Holly J. Mitchell of the Thirtieth Senate District asking for assistance with apprising the Judge and District Attorney that he was being denied the right to ask for the discovery that he wanted.

Civil Rights Complaint
CLAIN I CONTINUED

35. Plaintiff received a letter dated June 13, 2016, from attorney Bisnow that informed him that the discovery motion and pitchess motion were filed. Bisnow included a copy of the discovery request and a copy of the pitchess motions, one for the LAPD and the other for the SDPD. (Exhibits #37 & #38) Bisnow told Plaintiff that if there were any other materials relating to discovery and/or request for discovery which Plaintiff wanted to make the court aware, that he should forward those material request and Bisnow would make sure the ocurt received them.

36. Plaintiff received a letter dated June 14, 2016, from Senator Holly J. Mitchell. The letter was addressed to the Honorable Craig Richman concerning Plaintiff's concerns about the adequacy of Bisnow's strategy concerning discovery. This letter was also sent to Deputy District Attorney Corene Locke-Noble. (Exhibit #39)

37. On June 15, 2016, Plaintiff filed Objections to Bisnow's filing of pitchess motion and asked to submit "Pitchess" motion in pro-per due to conflict of interest between counsel and Plaintiff. (Exhibit #40)

38. On June 17, 2016, Plaintiff wrote a letter responding to Bisnow's June 13, 2016 letter (Exhibit #41) and again gave a very detailed explanation of what he wanted filed and included exhibits and documents to substantiate his discovery request and pitchess motion. (Exhibit #42)

39. On June 27, 2016, Bisnow sent Plaintiff a letter thanking him for his submissions and stated that he would make the Judge aware on the record of Plaintiff's position. Bisnow apprised Plaintiff that there was a hearing set for July 14, 2016. Plaintiff asked to attend this hearing but was denied. (Exhibit #43)

40. On July 5, 2016, Plaintiff wrote Bisnow a letter concerning the discovery request and Pitchess motions that were filed without asking for ALL the items requested by Plaintiff or submitting all of Plaintiff's exhibits and documents to support his pitchess motion. Plaintiff asked Bisnow to respond to his specific request and Bisnow never responded. (Exhibit #44)

41. On July 14, 2016, Plaintiff's §1054.9 discovery evidentiary hearing was held without allowing him to be present either in person, by video conference or telephonically despite his specific request.

42. Plaintiff states unequivocally that everything that attorney Bisnow stated at the July 14, 2016, hearing, that he was not allowed to attend was without his knowledge or approval, that the pitchess motions and discovery request were submitted without his approval.

43. During the July 14, 2016, discovery hearing Deputy District Attorney Corene Locke Noble argued that the San Diego Police Department WAS NOT a part of the investigation into the January 19, 1990, kidnapping

Civil Rights Complaint
CLAIM I CONTINUED


of Melvin Rodriguez. (DHRT 21, 25-27)

44. During the July 14, 2016 hearing Judge Craig Richman stated that
in regards to the pitchess request there was no kind of court docu-
mentation, a declaration, testimony or anything to substantiate Plaintiff's
request for an in camera review of the personnel files of the LAPD
and SDPD Officers to prove Plaintiff's allegations that suspects who
testified for the prosecution were beaten, assaulted, falsely imprisoned.
(DHRT 8 lines 20-27)

    Bisnow replied that the ONLY information that 'WE' have was an
arbitrator award to support Plaintiff's allegations. The Court address
the fact that Plaintiff had filed many documents to the Court, however,
the court refused to consider the filings due to Plaintiff being repre-
sented by counsel. Judge Richman stated that he was exploring sending
all of Plaintiff's filings back unopened. Plaintiff's sister LaWanda
Johnson knowing that Bisnow had in his possession the statement of
Andre' Burks that prosecution witness Tracey Gosha stated that she
was threatened by the police and testified as told by the police under
the threat of her son being placed in foster care and her being sent
to prison for 20 years (Exhibit #2); that Bisnow had in his possession
the affidavit of LaMount Johnson, brother of prosecution witness
LaTanya Johnson, who stated that she was assaulted by the LAPD and
while being interrogated threatened with more physical harm and a life
sentence if she didn't say what they told her to and that during her
testimony at Plaintiff's trial she was under the threat of going to
prison for life if she didn't say what the police told her to
(Exhibit #8); that Bisnow was also in possession of the lawsuits filed
by prosecution witness LaTanya Johnson and others due to being assaulted
(Exhibits #9 & #10), in possession of the number to the LAPD Personnel
complaint IA #90-469M (Exhibit #11) in possession of the names of many
LAPD Officers who participated in the assault of Ms. Johnson (Exhibit
#12) and in possession of other affidavits, declarations and exhibits
to support Plaintiff's pitchess motion; raised her hand in court, not
knowing court decorum in an attempt to apprise Judge Richman that
she had all of the evidence he seeked and that Bisnow failed to present
those documents.

    Judge Richman admonished Plaintiff's sister and told her that if
she raised her hand again in court she would be removed. (DHRT 10-11)

45. The pitchess motion was denied and the discovery request, as
stated was not the items Plaintiff asked to be submitted in light of
the informal request of Christa Hohmann. (Exhibit #16)

46. During a recess of the July 14, 2016 hearing, Bisnow told Plaintiff's
sister LaWanda Johnson told her that he (Bisnow) needs to know that
Plaintiff is innocent before he can request all of his discovery.
(Exhibit #45)

Civil Rights Complaint
CLAIM I CONTINUED


47. Lisa Norwood stated that during the July 14, 2016, discovery hearing recess she observed Plaintiff's sister with papers in her hand asking Bisnow why he didn't ask for all of the discovery that Stevie brought to his attention? Ms. Norwood overheard Bisnow reply that Plaintiff found out about a law that allows prisoners with life to ask for their discovery and that Plaintiff was just another GUILTY inmate bothering the district attorney and courts by asking for at least 300 articles of discovery that Plaintiff didn't need especially when Stevie knew he didn't have anything to prove his innocence. Bisnow added that Plaintiff only filed the discovery motion so that he could come to court and "See the Sights" instead of being inside prison walls. Ms. Norwood stated that she saw Plaintiff's sister with tears in her eyes shaking her head as she walked away. (Exhibit #46 ¶5-9)

48. Ms. LaDwana C. Patterson stated that during the July 14, 2016, discovery hearing she observed Bisnow to be completely ill prepared and disorganized and that it appeared Bisnow was not representing Plaintiff's best interest. (Exhibit #47)

49. Plaintiff received a July 15, 2016, letter from Bisnow telling him that the Pitchess motion was denied because there was no evidence submitted showing that any misconduct was committed by the police that led to a witness testifying falsely. (Exhibit #48)

50. On or about July 22, 2016, Plaintiff telephoned Bisnow and asked about his failure to submit his discovery request and his failure to submit his pitchess motion with the supporting documents. Bisnow told Plaintiff that he was not going to file a Pitchess motion against a career prosecutor and decorated police officers for a GUILTY person like Plaintiff, told Plaintiff "Boy don't call my office anymore!" and hung the telephone up in Plaintiff's face.

51. On or about August 5, 2016, Plaintiff filed a Marsden motion to discharge appointed attorney James Bisnow.

52. Plaintiff received a letter dated September 26, 2016, from Bisnow stating that Private Investigator Robert Freeman was coming to visit so that he could play the audio tapes. In addition Bisnow apprised Plaintiff that the Los Angeles District Attorney sent him two large envelopes that Plaintiff sent to them unopened and asked where did Plaintiff want the envelopes mailed to. (Exhibit #49)

53. On October 20, 2016, Plaintiff's discovery evidentiary hearing was held, without allowing him to attend by phone, physically or by video conference. During the discovery hearing Judge Richman stated that he was denying Plaintiff's Marsden motion. (II DHRT 2-3) Judge Richman also made a decision that Plaintiff did not need the audio tapes of the interviews of witnesses. (II DHRT 4-6)

   During the hearing Deputy District Attorney Corene Locke-Noble stated: "This is my-- I talked to Mr. Bisnow about this. I filed a

Civil Rights Complaint
CLAIM I CONTINUED

report. Once he picks up the remaining medical records-- I believe
the outstanding discovery I gave Mr. Bisnow, a declaration from detective
Harris, who indicated there was investigation by the San Diego police
department contained in the LAPD file. (Exhibit #50) I will file a
third progress report and a proposed order (Exhibit #51) for the court
to review and sign, deeming discovery completed at this point in time
and I will present that to Mr. Bisnow. (II DHRT 7 lines 2-12)

54. Plaintiff received a letter dated October 21, 2016, from Bisnow
stating that Private Investigator Robert Freeman would be coming to
visit in order for Plaintiff to listen to the audiotapes. Bisnow stated
that the prosecutor filed a "progress report" that he attached for
Plaintiff to review, that there were medical records which Bisnow
planned ot pick up and make a copy and after that there was NO
OUTSTANDING DISCOVERY.

    Bisnow stated that the next court date was December 13, 2016, and
that on that day the prosecution would urge the court to sign an order
closing the discovery motion and the case. (Exhibit #52)

55. On November 1, 2016, Plaintiff wrote Bisnow a letter and explained
that there were many items of discovery that were STILL OUTSTANDING,
that there was evidence that was not presented with his pitchess motion.
Plaintiff enclosed exhibits #34 & #35 with ALL attachments and exhibits
to support his request asking Bisnow to submit it to the court, but
was ignored. (Exhibit #53)

56. On November 8, 2016, Plaintiff was visited by Investigator Freeman
who allowed Plaintiff to listen to the audiotaped interviews of
witnesses and/or suspects and telephone calls. (Exhibit #54)

    While listening to the audiotaped interview of Ms. Tracey Gosha
(prosecution witness) Plaintiff overheard Ms. Gosha distraught and
crying as Sergeant A. Johnson of the San Diego Police Department told
her statements that she just answered yes to. This audiotape bolsters
exhibit #2.

    While listening to the audiotaped interview of Charles McMath
(juvenile) who was assaulted, McMath told Officer J.E. Navarro that
his head was "all messed up."

    While listening to the audiotaped conversation between LAPD detectives
Norman Jackson (call sign Foxfire) and Reeser detective Jackson stated
that the victim Melvin Rodriguez was under the invetigation for the
sales of drugs.

57. Plaintiff was denied a copy of those audiotapes and/or a transcript
of the tapes as well. (II DHRT 4-7)

58. On November 27, 2016, Plaintiff wrote a letter to Judges Richman,
William Ryan and Supervising Judge James Brandlin asking that his
1054.9 motion for postconviction discovery not be closed because he

Civil Rights Complaint
CLAIM I CONTINUED

had not been afforded the right to submit his own discovery request
or submit his pitchess and brady motion with the supporting documents.
(Exhibit #55)

59. On November 27, 2016, Plaintiff also wrote Los Angeles District
Attorney Jackie Lacey apprising her that Deputy District Attorney Corene
Locke-Noble submitted a proposed order to close the discovery proceeding
by saying that all discovery had been completed, however there were many
items of discovery that had not been provided. (Exhibit #56)

     Plaintiff brought to District Attorney Lacey's attention that his
trial attorney filed a detailed motion for discovery, (Exhibit #5),
and that the prosecution only provided the items listed in exhibit
#7. Plaintiff also brought to District Attorney Lacey's attention that
since the 2012, filing of his discovery motion the LADA's Office only
provided exhibit #4 in 2013 and exhibit #57 in 2016.

     Plaintiff asked District Attorney Lacey to compare those items
provided in 1992 (exhibit #7), 2013 (exhibit #4) and in 2016 (exhibit
#57) with the list of discovery that is STILL OUTSTANDING. (Exhibit
#35) Plaintiff never received a response despite his request for not
only a fair oppotunity to present his discovery request but to ensure
that his discovery hearing would not be closed.

60. On December 13, 2016, Plaintiff's §1054.9 discovery hearing was
held, without allowing him to attend physically, by telephone or by
video conference. During the hearing both Deputy District Attorney
Corene Locke-Noble and attorney James Bisnow stood before the Honorable
Judge Craig Richman and stated that ALL discovery was completed and
that the 1054.9 motion could be closed. These statements were made
despite DDA Locke-Noble being presented with an informal response on
January 15, 2015, that she failed to respond to (Exhibit #16), and
attorney Bisnow ignoring Plaintiff's discovery request in exhibit
#35 and pitchess motion in exhibit #34.

61. As Judge Richman was about to close Plaintiff's discovery proceeding
an attorney Naren M. Hunter Cal Bar #163504 stepped forward and
stated that he was hired by the family of Plaintiff and that he was
hired for the sole purpose of submitting Plaintiff's discovery request
and pitchess motion. Due to this new revelation Judge Richman post-
poned the hearing until April 20, 2017.

62. After the hearing attorney Naren Hunter was approached by attorney
Bisnow who told him that Plaintiff was GUILTY and that he should not
represent a GUILTY man.

63. After his conversation with Bisnow attorney Hunter asked Plaintiff's
wife Mrs. Misty Stevenson could he walk her to her car, that he needed
to speak with her, but only outside due to the walls having ears. Once
outside attorney Hunter explained to PLaintiff's wife that attorney
Bisnow had some personal vendetta against Plaintiff, that Bisnow expressed
his view of Plaintiff being a GUILTY person and should not be helped.

Civil Rights Complaint
CLAIM I CONTINUED

64. On or about January 5, 2017, Plaintiff spoke with attorney Naren Hunter and during this conversation attorney Hunter stated that he talked to Plaintiff's former attorney James Bisnow and was shocked to hear an Officer of the Court speak with such disdain about a former client as Bisnow did in concerns to Plaintiff being GUILTY in his, Bisnow's view. Attorney Hunter also apprised Plaintiff that Judge Craig Richman ordered him not to give Plaintiff a copy of the audio recordings or make a transcript of those recordings.

65. Plaintiff states that attorney Bisnow called attorneys Dennis Fischer of Santa Monica, Steffeny Holtz of Beverly Hills and Tracy Dressner of LaCrescenta and spoke in a negative and demeaning way about Plaintiff and his case to the point that attorneys Holtz and Dressner ceased their individual pro-bono assistance for Plaintiff. Dennis Fischer told Plaintiff that as long as Bisnow was working on his case that he could not work with "such a man" (Bisnow).

66. The collective actions and inactions of Los Angeles Deputy District Attorney Corene Locke-Noble and appointed attorney James S. Bisnow has deprived Plaintiff of receiving and/or requesting discovery material as afforded state law entitlement §1054.9, which has hindered Plaintiff with obtaining discovery materials of 'Interest' that may have a direct impact on gaining his "Liberty." Both DDA Locke-Noble and attorney Bisnow's common objective was to have Plaintiff's §1054.9 motion closed by misleading the Court and saying, on the record, that Plaintiff had received ALL OF THE DISCOVERY, that the proceeding was COMPLETE so that the postconviction motion could be terminated, thus denying Plaintiff the Right to at least ask for and possibly obtain material information from discovery items and the personnel files of many Officers from both the LAPD and SDPD.

    The record clearly shows the Los Angeles District Attorney's Office only provided exhibit #7 to Plaintiff's trial attorney in 1992, that since the 2012 filing of the §1054.9 motion the LADA's Office only provided items listed in exhibit #4 in 2013 and items listed in exhibit #57 in 2016. Both DDA Locke Noble-Noble and attorney Bisnow was made aware that there were many items of discovery that was missing; in January 2015, Locke-Noble was presented with an informal request for discovery items (exhibit #16) and Locke-Noble refused to provide ANY of the materials requested. (Exhibit #17) Attorney James Bisnow was made aware of the January 15, 2015 informal request for discovery in exhibit #16 and presented with both a discovery request (Exhibit #35) and a pitchess motion (Exhibit #34) both prepared by Plaintiff yet ignored those request and submitted his own discovery request (exhibit #28) and two pitchess motions (Exhibits #37 & #38) without Plaintiff's approval.

    On December 13, 2016, when DDA Locke-Noble and attorney Bisnow stood before the Honorable Craig Richman, Judge and stated that ALL DISCOVERY WAS COMPLETE and that the §1054.9 postconviction motion could be closed they shared a common objective to deprive and prevent Plaintiff from asking for and receiving discovery material as afforded state

Civil Rights Complaint
CLAIM I CONTINUED

law entitlement §1054.9 where their minds were in agreement to violate
Plaintiff's constitutional due process right to obtain pertinent
information from documents, audiotapes and the personnel records of
many Officers from the LAPD and SDPD who were directly involved in
misconduct that was deliberately covered up by the prosecution.

67. Plaintiff asks this Honorable Court to take **JUDICIAL NOTICE** to
a case called **Miller v. Brown, 2014 U.S. Dist Lexis 15116; case
number, 1:12-cv-01589-LJO-BAM(PC)** a case where Bisnow was sued for
working with the prosecution to keep a defendant in prison; Plaintiff
is of the same feeling.

68. On April 7, 2017, Plaintiff filed a §1054.9 motion for postconviction
discovery and a "Pitchess & Brady" motion in the Los Angeles Superior
Court due to not hearing from attorney Hunter since January of 2017.
(Exhibits #58, #59 & #60) Plaintiff believes that his family and
friends should not have to pay an attorney just to be allowed to submit
his discovery request and pitchess motion even though Judge Richman
has mandated that is the only way Plaintiff can have access to his
§1054.9 proceeding.

69. On April 17, 2017, Plaintiff sent a letter and attachments to Los
Angeles District Attorney Jackie Lacey apprising her of the deliberate
withholding and concealing of evidence by her Deputy Corene Locke-Noble.
(Exhibit #62)

70. On April 20, 2017, the §1054.9 discovery hearing was held without
allowing Plaintiff to attend physically, telephonically or by video
conference, where unknown to Plaintiff attorney Hunter was present.
Attorney Hunter explained to the Court that due to his being ill and
having other issues he needed a continuance. DDA Locke-Noble stated
that there was no need for any continuance because the LADA's Office
had provided ALL OF THE DISCOVERY MATERIAL AND THERE WAS NOTHING MORE
TO BE PROVIDED.

    Judge Richman commented that Plaintiff filed a discovery request
and pitchess motion (#58, #59 & #60) and that he was not entertaining
anything filed by Plaintiff and if he wanted something filed to the
court it MUST come from his attorney Hunter.

71. Judge Richman granted attorney Hunter's request for a continuance
till August 18, 2017.

72. After the hearing attorney Hunter spoke to Plaintiff's wife and
discussed how in his view Plaintiff's case was "HOT" due to the severity
of the allegations concerning a sitting Deputy District Attonrey
covering up police misconduct by deliberately withholding evidence.
Attorney Hunter stated that he needed to discuss being paid more
money because he did not know that the prosecutor who prosecuted
Plaintiff was DDA Patricia Wilkinson who was the Head Deputy District
Attorney of the Los Angeles County Major Crimes Unit.

Civil Rights Complaint
CLAIM I CONTINUED

73. Plaintiff has obtained evidence that exposes a cover up of Police and Prosecutorial Misconduct and he is being denied his due process and equal protection rights as those similarly sentenced as him to life without parole to be able to submit his discovery request, submit his pitchess motion with supporting documents and be self represented like other inmates during his §1054.9 proceeding that he and he alone initiated in 2012. (Exhibit #1)

74. Plaintiff has obtained evidence that shows what his attorney asked for in his initial discovery request (exhibit #5) and what the Los Angeles District Attorney's Office via DDA Patricia Wilkinson provided. (Exhibit #7) Plaintiff has showed what the LADA's Office through Corene Locke-Noble has provided in 2013 (Exhibit #4) and 2016 (Exhibit #57)

Newly discovered evidence demonstrates that the lead investigators in Plaintiff's case Norman Jackson and Larry Hedwall along with Special Investigation Section (SIS) detectives viciously assaulted, battered and threatened suspects LaTanya Johnson (prosecution witness) and Donald-Denise-Diane Manuel during their arrest, (Exhibits #9, #10, #11 & #14 page 2), however, the prosecution never divulged that infor-mation to Plaintiff's trial attorney or to him during the §1054.9 proceeding. Despite SIS detectives Charles Bennett, Jerry Brooks, Brian Davis, Clarence Robert Chapman, John Fruge, Ernie Haleck, John Helms, Richard Spelman, Peter Weirtr, Larry Winston, Gary Zerbey and Richard Zierenberg being directly involved in the arrest and/or assault of Ms. Johnson and The Manuels a review of exhibits #7, #4 & #57 never provided their names, original notes or written reports. Exhibit #14 pages 2-4 shows that lead detectives Jackson and Hedwall interviewed suspects LaTanya Johnson, Denise Manuel, Diane Manuel, Donald Manuel, Kevin Richardson, Charles McMath, Tracey Gosha; victim Melvin Rodriguez; percipient witnesses Inez Alvarenga and Lisa Rogers their original notes written reports and audiotapes WERE NEVER disclosed to Plaintiff's trial attorney and during Plaintiff's state law entitlement §1054.9 proceeding, the LADA's not only failed to provide the material to Plaintiff's attorney in 1992, but has failed to provide those dis-covery items now by stating to Judge Richman that ALL DISCOVERY MATERIAL IS COMPLETE and that everything has been turned over.

In addition despite SDPD Sergeant A. Johnson interviewing suspect Charles McMath (juvenile assaulted by the police) the notes, written report and audiotape has never been disclosed; despite Sergeant J. Wray along with Officers D. Collier, F. Hoerman, C. Medina and J. Dunnam participating in the arrest of Richardson, McMath and Gosha their reports were never provided in 1992 or during Plaintiff's 1054.9 proceeding.

75. Plaintiff is being arbitrarily deprived of the right to participate in state law entitlement §1054.9 so that he can use the proceeding as an aid with obtaining discovery material that was and is currently being withheld by the LADA's Office. The Court has ruled that the only

Civil Rights Complaint
CLAIM I CONTINUED

way that Plaintiff can submit his discovery request and pitchess and
brady motion during the §1054.9 proceeding is, he must accept either
attorney James S. Bisnow, who has called Plaintiff GUILTY, told other
attorneys that Plaintiff is GUILTY, told Plaintiff's family that he
is GUILTY and refused to submit Plaintiff's discovery request and
pitchess motion with all supporting documentation, or to have to pay
a HEFTY price to a retained attorney to submit his discovery request
and pitchess and brady motion, money that Plaintiff doesn't have.

Other inmates sentenced to LWOP like Plaintiff are allowed to
participate in their §1054.9 proceeding without an attorney either
being appointed or being forced to pay for one, they are allowed to
participate in the actual discovery evidentiary hearing either by
phone, physically or by video conference, however, Plaintiff is being
treated unfairly without justification.

76. Plaintiff poses the question, why is he being arbitrarily deprived
the RIGHT to participate in the §1054.9 proceeding, why is he being
denied fundamental fairness to submit his discovery request and pitchess
motion with supporting documents? Plaintiff has uncovered a Major
Cover-Up by a sitting Los Angeles County Deputy District Attorney who
runs the Major Crimes Unit. There is a collective effort to CHILL
Plaintiff's RIGHT to petition the Government, RIGHT to Freedom of
Speech and RIGHT to Access the Court during his §1054.9 proceeding
to prevent him from at least asking for and putting evidence on the
record that a sitting Deputy District Attorney deliberately covered
up gross misconduct by withholding exculpatory and impeachment evidence.

77. Plaintiff's retained attorney Naren Hunter expressed his trepidation
about PLaintiff's case being "HOT" due to the allegations and has asked
for more money.

78. Judge Craig Richman has ruled that the only way Plaintiff can partake
in his §1054.9 proceeding is, accept James S. Bisnow or pay for an
attorney (even though YOU personally are indigent) to get your discovery
or be shut out a proceeding that was enacted to assist with obtaining
discovery material that was improperly withheld. In re Steele, 32 Cal.4th
682, 694(2004)

Judge Richman has ruled that Plaintiff may NOT for any reason have
a copy of the audiotaped interviews of Tracey Gosha, Charles McMath
and Kevin Richardson along with the conversation between detectives
Jackson and Reeser, even though 1054.9 affords Plaintiff a RIGHT to
those recordings either by tape or transcripts.

79. Plaintiff has a vested Interest in state law entitlement §1054.9
to gain his Liberty, he ONLY ask the RIGHT to be allowed to submit
his discovery request (Exhibit #35) submit his pitchess motion with
supporting documents (Exhibit #34), be allowed the RIGHT to attend
his §1054.9 hearing by telephone or video conference due to his fear
of retaliation from those loyal to Deputy District Attorney Patricia
Wilkinson at the County Jail and the Criminal Courts Building where he

Civil Rights Complaint
CLAIM I CONTINUED

can be attacked and/or hurt; most importantly Plaintiff would like
to have the RIGHT to be self-represented to that he can use the §1054.9
statute as it was enacted, that being, to submit his request and use
the proceeding as an aid with an Interest in obtaining FREEDOM from
bodily restraint from an unlawful conviction as other inmates who have
sentences of LWOP are allowed to do, (Exhibit #61), to prove his innocence.

80. Plaintiff states that through the actions and inactions of Los
Angeles Superior Court Judge, Craig Richman, Los Angeles Deputy District
Attorney Corene Locke-Noble and state appointed attorney James S. Bisnow
he was arbitrarily deprived of state law entitlement §1054.9 to
fundamental fairness to request his discovery, submit his pitchess
motion with supporting documentation, receive discovery material that
was informally requested (Exhibit #16), be self represented during
the §1054.9 proceeding, participate in the 1054.9 discovery hearing
by telephone and/or video conference like other inmates similarly
sentenced to LWOP; his due process and equal protection clause RIGHTS
as afforded and guaranteed by the 14th Amendment to the United States
Constitution and Article I, Section 7(a) of the California Constitution
was violated, and his RIGHT to Freedom of Speech, RIGHT to petition

the Government and RIGHT to Access the Court during his §1054.9 proceeding
that he and he alone initiated in 2012 was CHILLED in violation of
the 1st Amedment to the United States Constitution.

    The United States Supreme Court in Hicks v. Oklahoma, 447 U.S. 343,
346 (1980) stated:

        "A State violates a [prisoner's] due process right
        to fundamental fairness if it arbitrarily deprives
        the [prisoner] of a state law entitlement."

**D. CLAIMS***

CLAIM II

The following civil right has been violated:

Plaintiff was denied the RIGHT to Access to the Court in violation of the First Amendment to the United States Constitution by Craig Richman, Judge by refusing to allow Plaintiff to attend his state law entitlement §1054.9 postconviction discovery hearing, either physically, telephonically or by video conference, and denied Plaintiff the right to file his discovery request and pitchess & brady motion to the court infringing upon his liberty interest in utilizing state procedures for those sentenced to death and/or Life Without Parole to request discovery material and be present during a crucial proceeding, and forced Plaintiff to either accept an attorney who called PLaintiff GUILTY and failed to submit all of his discovery request and pitchess motion with supporting documentation; or pay a hefty price for a retained attorney to submit both his discovery request and pitchess motion with supporting documentation, even though other defendants similarly sentenced as Plaintiff were allowed to participate in their §1054.9 state law entitlement proceeding.

Supporting Facts: Include all facts you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to violate your right.

Plaintiff incorporates paragraps 1 through 80 as though they were stated fully herein.

*If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same outline.*

**D. CLAIMS\***                              **CLAIM III**

The following civil right has been violated:

Plaintiff was denied his First Amendment Right to Access to the Court by Appointed Attorney James S. Bisnow for failing to request that Plaintiff be allowed to attend his state law entitlement §1054.9 discovery hearing by telephone or by video conference.

Plaintiff was denied his due process and equal protection rights under the Fourteenth Amendment by Appointed Attorney James S. Bisnow by refusing to submit Plaintiff's discovery request and pitchess & brady motion with supporting documentation. Plaintiff was slandered by Appointed Attorney James S. Bisnow where he actively violated Prof & Busin Code §6068 by telling PLaintiff's family, friends and attorneys that he was GUILTY; Bisnow also mislead and lied to the Court in direct violation of Cal Business and Prof Code 6068(d); Cal Rules of Prof Cond §5-200(B) thus denying PLaintiff's due process right to request and receive discovery material that had a direct on his Liberty Interest by stating that ALL discovery material was COMPLETE and that the §1054.9 state law entitlement proceeding could be closed

Supporting Facts: Include all facts you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to violate your right.

Plaintiff incorporates paragraphs 1 through 80 as though they were stated fully herein.

*\*If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same outline.*

**D. CLAIMS***                          **CLAIM IV**

The following civil right has been violated:

Plaintiff was denied due process under the Fourteenth Amendment to the United States Constitution by Los Angeles Deputy District Attorney Corene Locke-Noble where, during state law entitlement §1054.9 proceeding she refused to provide any of the discovery materials requested on January 15, 2015 (Exhibits #16 & #17) and stood before the Honorable Craig Richman on December 13, 2016 and April 20, 2017, stating that ALL DISCOVERY WAS COMPLETED calling for the close of PLaintiff's §1054.9 proceeding; Locke-Noble violated Cal Business & Prof Code §6068(d); Cal Rules of Prof Conduct where she deliberately mislead and lied to the court concerning discovery material that had a direct impact of PLaintiff's ability to obtain discovery material with a "Liberty Interest."

As a result of violating Plaintiff's due process right to disclose requested material during a state created law DDA Locke-Noble violated Assem Bill 1909, which leaves her open to both felony prosecution and possible civil liability for withholding evidence during §1054.9's proceedings continuing a cover up since 1990.

Supporting Facts: Include all facts you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to violate your right.

Plaintiff incorporates paragraphs 1 through 80 as though they were stated fully herein.

*If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same outline.

**D. CLAIMS\***

**CLAIM 'V**

The following civil right has been violated:

Plaintiff was denied due process under the Fourteenth Amendment to request items
of discovery and request an in camera review of certain LAPD and SDPD Officers
and receive discovery material during his state law entitlement §1054.9 proceeding
a 'Liberty Interst' due to the acts of Los Angeles Deputy District Attorney Corene
Locke-Noble and appointed attorney James S. Bisnow who"CONSPIRED" to deprive Plaintiff
of his constitutional right to request certain discovery material and personnel records
and receive discovery materials where DDA Locke-Noble omitted to perform her duty and
provide discovery material requested (Exhibit #16) and James Bisnow participated in
this act by failing to submit Plaintiff's request a duty both were legally required to
do, where they shared a common objective to prevent Plaintiff from obtaining material
exculpatory and impeachment evidence that was deliberately withheld tocover up gross
police and prosecutorial misconduct by misleading and lying to Judge Craig Richman on
December 13, 2016, during a discovery hearing that Plaintiff received ALL of his dis-
covery and the §1054.9 proceeding could be closed when they had inpossession evidence
that showed discovery was OUTSTANDING. (Exhibits #16, #34 & #35)

Supporting Facts: Include all facts you consider important. State the facts clearly, in your own words, and without
citing legal authority or argument. Be certain you describe, in separately numbered paragraphs, exactly what each
DEFENDANT (by name) did to violate your right.

Plaintiff incorporates paragraphs 1 through 80 as though they were stated fully
herein.

*\*If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same
outline.*

CV-66 (7/97)

**D. CLAIMS***

CLAIM VI

The following civil right has been violated:

Plaintiff was denied due process under the Fourteenth Amendment to the United States Constitution by Jackie Lacey, the Los Angeles County District Attorney and supervisor of Deputy District Attorney Corene Locke-Noble where District Attorney Lacey was apprised on two separate occasions that her Deputy Locke-Noble was deliberately withholding discovery material during Plaintiff's state law entitlement Penal Code §1054.9 proceeding. (Exhibits #56 & #62) Being the Supervisor of Deputy Locke-Noble District Attorney Lacey failed to ensure that ALL discovery material that should have been provided per §1054.9(b) was disclosed to Plaintiff after she was apprised that not only did her Deputy Locke-Noble withhold specific evidence, but that her Deputy lied and misled the Court on three separate occasions that there is NO MORE DISCOVERY and that the §1054.9 proceeding for Plaintiff could be closed. State law entitlement PC 1054.9 is a "Liberty Interest" protected by the due process clause of the 14th Amendment and due to the LADA's Office Supervisor District Attorney Jackie Lacey ignoring Plaintiff's letters she allowed her deputy to committ an act of withholding evidence and failed to correct the misconduct.

Supporting Facts: Include all facts you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to violate your right.

Plaintiff incorporates paragraphs 1 through 80 as though they were stated fully herein.

*If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same outline.*

CIVIL RIGHTS COMPLAINT

**D. CLAIMS***

CLAIM · VII

The following civil right has been violated:

Plaintiff was denied due process and equal protection under the Fourteenth

Amendment to the United States Constitution by Zeke Perlo, Director of the

Los Angeles County Bar 'Indigent Criminal Defense Appointments' Office and Supervisor

of appointed attorney James S. Bisnow. Mr. Perlo was apprised by Plaintiff on three

separate occasions that attorney Bisnow was deliberately failing to submit his

discovery request and pitchess motion with supporting documents and that there was

an irreconcilable conflict where ineffective assistance of counsel was ongoing that

impaired his ability to utilize the §1054.9 proceeding as an aid with preparing his

upcoming petition. (Exhibits #26, #31 & #36) Mr. Perlo ignored all of these written

complaints which allowed Bisnow, who worked under him, to deprive Plaintiff the

RIGHT to request his discovery and submit his pitchess motion with supporting documents

that had a direct impact on Plaintiff's 'Liberty Interest.'

Supporting Facts: Include all facts you consider important. State the facts clearly, in your own words, and without citing legal authority or argument. Be certain you describe, in separately numbered paragraphs, exactly what each DEFENDANT (by name) did to violate your right.

Plaintiff incorporates paragraphs 1 through 80 as though they were stated fully

herein.

*If there is more than one claim, describe the additional claim(s) on another attached piece of paper using the same outline.*

## E. REQUEST FOR RELIEF

I believe that I am entitled to the following specific relief:

1. Issue a Declaratory judgment stating that:

(a) Defendant Craig Richman, Judge, refusal to allow Plaintiff to submit his discovery request, submit his pitchess motion with supporting documents and be self represented as afforded other defendants similarly sentenced to LWOP violated Plaintiff's rights under the Fourteenth Amendment to the United States Constitution and constituted a denial of state law entitlement §1054.9 a "Liberty Interest" under state law

(b) Defendant Craig Richman, Judge, refusal to allow Plaintiff to attend his §1054.9 discovery hearings physically, telephonically or by video conference and refusal to accept PLaintiff's filing of his discovery request and pitchess motion with supporting documents violated and continues to violate Plaintiff's rights under the First Amendment to the US Constitution to Access the Court during his state law entitlement §1054.9 proceedings hindering his 'Liberty Interest' as afforded state law

(c) Defendant James S. Bisnow failure to ensure that Plaintiff attended his §1054.9 state law entitlement discovery hearing violated Plaintiff's rights under the First Amendment to the US Constitution to Access the Court during a critical stage of the 'Liberty Interest' proceeding

(d) Defendant James S. Bisnow's refusal to submit Plaintiff's specific discovery request and pitchess & brady motion with supporting documents as requested by Plaintiff violated PLaintiff's rights under the Fourteenth Amendment to the US Constitution where PLaintiff was deprived from submitting request during a state law entitlement proceeding with a 'Liberty Interest' in obtaining discovery material that was deliberately withheld and obtaining material from the personnel files of Officers from the LAPD and SDPD during a §1054.9 proceeding

(e) Defendant Corene Locke-Noble's refusal to disclose discovery material and conceal evidence despite being specifically made aware of the existence of exculpatory and impeaching evidence during state law entitlement §1054.9 discovery proceeding deprived Plaintiff his 'Liberty Interest' thus violating Plaintiff's rights under the

APRIL 26, 2017
_____
(Date)

_____
(Signature of Plaintiff)

Civil Rights Complaint
REQUEST FOR RELIEF CONTINUED


Fourteenth Amendment to the US Constitution.

(f) Defendants James S. Bisnow and Corene Locke-Noble violated
Plaintiff's Fourteenth Amendment Right when they "CONSPIRED" during
Plaintiff's state law entitlement §1054.9 proceeding to prevent him
from receiving and requesting discovery material and records from the
personnel files of Officers from the LAPD and SDPD denying him the
right to obtain information that had a 'Liberty Interest' by telling
Judge Craig Richman that all of the discovery material was provided
and that the §1054.9 proceeding could be closed

(g) Defendant Jackie Lacey's failure to take action to prevent her
Deputy from misleading the Court and stating that Plaintiff received
ALL of hisdiscovery material during the state law entitlement §1054.9
proceeding violated Plaintiff's 14th Amendment Right where discovery
requested pertaining to Plaintiff's Liberty Interest could have been
provided

(h) Defendant Zeke Perlo's failure to take action and remove Bisnow
from representing Plaintiff denied Plaintiff's 14th Amendment right
during state law entitlement §1054.9 proceeding where Perlo's
appointed attorney prevented Plaintiff from requesting discovery
material and pitchess motion with supporting documents to receive
documents pertaining to his 'Liberty Interest'

(i) Defendant Corene Locke-Noble's intentional and bad faith actions
to withhold relevant exculpatory material and information, knowing
that it is relevant and material to the outcome of Plaintiff's state
law entitlement §1054.9 proceeding to further obtain material that
is substantial to his 'Liberty Interest' violated Plaintiff's due process
right under the Fourteenth Amendment by fraudulently telling the Court
that ALL discovery was provided, therefore violating state law entitlement
PC §141(c) during Plaintiff's §1054.9 proceeding

(j) Defendant James S. Bisnow's intentional and bad faith actions to
fail to submit all of Plaintiff's discovery request and submit his
pitchess and brady motion with supporting documents deprived Plaintiff
of relevant and material exculpatory information during the state law
entitlement §1054.9 proceeding that had a substantial impact of
Plaintiff's 'Liberty Interest' violated the due process right of
Plaintiff under the 14th Amendment by fraudulently telling the court
that ALL discovery material was provided, therefore violating state
law entitlement PC§141 during Plaintiff's §1054.9 proceeding as a private
citizen contracted by the County (surrogate for the prosecution)

2. Issue an injunction ordering Defendants Craig Richman, Corene Locke-
Noble, Jackie Lacey or their agents to:

(a) (Richman) Immediately arrange for Plaintiff to submit a discovery
request under §1054.9

(b) (Richman) Immediately arrange for Plaintiff to submit a "Pitchess

Cicil Rights Complaint
REQUEST FOR RELIEF CONTINUED


-(b) continued

& Brady" motion with supporting documentation under §1054.9

(c)(Richman) Immediately arrange for Plaintiff to be self-represented
during the remainder of the §1054.9 proceeding

(d)(Richman) Immediately arrange for Plaintiff to attend the §1054.9
discovery hearing by telephone or video conference during the remainder
of the §1054.9 proceedings

(e)(Locke-Noble) Immediately provide ALL of the discovery items listed
in exhibit #35 to Plaintiff during §1054.9 proceeding; or

(f) (Locke-Noble) Submit a signed affidavit under penalty of perjury
stating that "if there IS NO DISCOVERY material or no further discovery
materials to be provided beyond what has already been disclosed in
exhibits #4 & #57" then Locke-Noble should so state on or before the
upcoming §1054.9 discovery hearing on August 18, 2017. The affidavit
should state the factual basis for the conclusion, quote, nothing
exists as to be discovered as to this item(s) beyond what has already
been provided in exhibits #4 & #57, end quote. The affidavit should
address what efforts were made by Locke-Noble to find th eitem(s)
of discovery, including what, if any, agencies (San Diego Police
Department) or individuals were contacted and their responses." See
e.g. Barnett v. Superior Court, 79 Cal.Rptr.3d 199, 231 (Cal.App.
3 Dist 2008)

(g) (Jackie Lacey) Immediately provide ALL of the discovery items
listed in exhibit #35 to Plaintiff during §1054.9 proceeding; or

(h) (Jackie Lacey) Immediately submit a signed affidavit under penalty
of perjury stating that "there IS NO DISCOVERY material or no
further discovery materials to be provided beyond what has already
been disclosed in exhibits #4 & #57 as stated by Deputy District Attorney
Corene Locke-Noble and present the affidavit for the upcoming state
law entitlement §1054.9 discovery hearing on August 18, 2017. The
affidavit should also state the factual basis for the conclusion,
quote, nothing exists as to be discovered as to this item(s) beyond
what has already been provided in exhibits #4 & #57, end quote. The
affidavit should also address what efforts were made by Jackie Lacey
to find the item(s) of discovery listed in exhibit #35, including
what, if any, agencies (San Diego Police Department) or individuals
were contacted and their responses." See e.g. Barnett, supra 79
Cal.Rptr.3d at 231.

3. Award compensatory damages in the following amounts against:

(a) $1,000,000 against Defendant James S. Bisnow for emotional injuries
resulting from his denial of Plaintiff's due process right to submit
the specific discovery request and pitchess motion with supporting

Civil Rights Complaint
REQUEST FOR RELIEF CONTINUED

-(a) continued

documentation during Plaintiff's state law entitlement §1054.9 proceeding
and for preventing Plaintiff from requesting and obtaining material
evidence that supported his 'Liberty Interest.' By this demand,
Plaintiff seeks compensatory damages for his family and friends having
to pay a retained attorney to perform a duty that Bisnow was appointed
to legally carry out. Plaintiff is INNOCENT and has had sleepness
nights worring, crying, stressed, cannot eat, stomach hurting from being
nervous with dispair for having Bisnow not only tell him that he was
GUILTY but Bisnow actively called attorneys Holtz, Dressner, Fischer
and attorney Naren Hunter telling them that Plaintiff was GUILTY and
that they should not assist Plaintiff. Bisnow lied and deceived the
Court by stating that ALL discovery material was COMPLETE and that
Plaintiff's state law entitlement §1054.9 proceeding could be CLOSED
thereby preventing Plaintiff ANY attempt to request discovery material
and an in camera review of the personnel records of LAPD and SDPD
Officers who participated in misconduct. This information has a direct
impact on Plaintiff's 'Liberty Interest' where he is trying to prove
that he is INNOCENT and that the prosecution and investigators partici-
pated in gross misconduct that was covered up. By standing before the
Court and saying that Plaintiff received ALL of his discovery and that
the §1054.9 proceeding could be closed Bisnow participated in unethical
conduct by an attorney by lying to and misleading the court in violation
of California Business and Professions Code §6068(d); California Rules
of Professional Conduct 5-200(B). Bisnow was previously sued for behavior
that was prejudicial to his client in Miller v. Brown, 2014 U.S.
Dist. LEXIS 15116 where similar in this case Plaintiff claims that
Bisnow **"CONSPIRED"** withLos Angeles District Attorney Corene Locke-
Noble to prevent Plaintiff from obtaining discovery material that
he was legally entitled to ask for and receive as afforded state law
entelement §1054.9 to receive information thereby deprive him of his
'Liberty Interest' in utilizing §1054.9 to obtain reversal of his
unlawful conviction, thereby depriving Plaintiff his due process right
as guaranteed by §1054.9 through the 14th Amendment to the United
states Constitution.

(b) $1,000,000 against Defendant Zeke Perlo of the Los Angeles County
Bar, Indigent Criminal Defense Appointment Office, who allowed Bisnow
to violate Plaintiff's due process rights as afforded the 14th
Amendment during the §1054.9 state law entitlement §1054.9 proceedings.
As Bisnow's Supervisor Perlo was apprised on three separate occasions
by letter from Plaintiff and one telephonce call from Plaintiff's
counsin Ms. Charlene Rodgers about Bisnow's deprivation of Plaintiff's
rights. By this demand, PLaintiff seeks compensatory damages due to
Perlo's failure to take corrective actions and remove Bisnow from
Plaintiff's case and replace him with another attorney to represent
PLaintiff's best interest not against his interest.

Civil Rights Complaint
REQUEST FOR RELIEF CONTINUED

4. Award Punitivedamages in the following amounts:

(a) $27,000,000 against The Los Angeles District Attorney's Office
through Defendant Deputy District Attorney Corene Locke-Noble and
her Supervisor for depriving Plaintiff of his state law entitlement
right to obtain discovery material during the §1054.9 proceeding
to obtain items that were never disclosed since 1990.

    Plaintiff is aware of ABSOLUTE IMMUNITY for prosecutors. However,
a question has arised. On January 1, 2017, as a result of California
Assemblywoman Patty Lopez, Governor Jerry Brown signed into law
Assembly Bill 1909, which called for penal code Section 141 to be
amended. Penal Code §141(c) reads in part:

        "A prosecuting attorney who intentionally and in
        bad faith alters, modifies, or withholds any physical
        matter, digital image, video recording, **or relevant
        exculpatory material or information, knowing that it
        is relevant and material to the outcome of the case,**
        with the specific intent that the physical matter,
        digital image, video recording, **or relevant exculpatory
        material or information will be concealed or destroyed**
        or fraudulently represented as the original evidence
        upon a trial, **PROCEEDING,** or inquiry, is **GUILTY OF A
        FELONY** punishable by imprisonment pursuant to subdivision
        (h) of Penal Code Section 1170 for 16 months, or two
        or three years."

    In light of the newly amended penal code law has been established
that if a prosecuting attorney intentionally and in bad faith withholds
relevant exculpatory materials or information, knowing that it is
relevant and material to the outcome of the case and with a specific
intent to withhold and/or conceal relevant exculpatory material
upon a trial or **PROCEEDING** is **GUILTY OF A FELONY** punishable by
imprisonment.

    During Plaintiff's state law entitlement §1054.9 **"SPECIAL PROCEEDING"**
as recognized by the California Supreme Court in Maas v. Superior
Court, 2016 DJDAR 11125, due to the process being a precursor to the
filing of a habeas corpus petition, the Los Angeles District Attorney's
Office was presented with a request for discovery items as a 'Liberty
Interst.' (Exhibits #1 & #16) In response to those request the Los
Angeles District Attorney's Office only provided exhibits #4 & #57.

    Deputy District Attorney Corene Locke-Noble has argued and argued
that the San Diego Police Department IS NOT a part of the investigation
into the case against Plaintiff. (DHRT 21, 25-27) Therefore, Plaintiff
asks this court to review exhibit #4. Exhibit #4 is a list of the
discovery material that was provided by the LADA's Office in 2013,
during the 1054.9 proceeding. If we take DDA Locke-Noble by her words
that the SDPD was not involved in the investigation, Plaintiff asks

Civil Rights Complaint
REQUEST FOR RELIEF CONTINUED

this Court to review the list of discovery that was provided by the
LADA's Office to his trial attorney in 1992. (Exhibit #7)

A review of exhibits #4 provided in 2013, and exhibit #7 provided
in 1992, shows that the two lists mirror one another with the exception
of points 11, 15 and 17 that were not provided to Plaintiff's trial
attorney in 1992. With that in mind, that being points 11, 15 and
17 were not disclosed to Plaintiff's attorney in 1992, lets take
DDA Locke-Noble by her word that the SDPD was not a part of the inves-
tigation in to Plaintiff's case and exclude points 4, 5, 6, 8, 9,
and 10 in exhibit #7. That leaves points 1, 2, 3, 7, 16, 18 & 19 as
the ONLY reports prepared and disclosed to Plaintiff's trial attorney.

A further review of exhibit #7, Plaintiff asks that this court
look at point 1 in exhibit #7 that is titled 'LAPD Follow-up
Investigation Report-DR 90-0706185 dated 1/23/90 (4 pages). Point
1 in exhibit #7 is attached as Exhibit #14. If this Court reviews
exhibit #14, at page 2 first paragraph LAPD detectives Norman Jackson
#15526 and Larry Hedwall #20619 document that they were assigned to
investigate the kidnapping of Rodriguez.

A review of exhibit #14 shows that the lead investigators from
the "ONLY" agency that investigated the kidnapping of Melvin Rodriguez
interviewed LaTanya Johnson, Donald Manuel, Denise Manuel and Diane
Manuel (Exhibit #14 pages 2-3) and interviewed Kevin Richardson,
Charles McMath and Tracey Gosha along with Inez Alvarenga, Lisa
Rodgers and Melvin Rodriguez, however, the original notes, written
reports and audiotapes were never provided to Plaintiff's trial attorney
nor to him during this §1054.9 state law entitlement §1054.9 proceeding.

A further review of exhibit #14 on page 2 detectives Jackson
and Hedwall documented that they participated in the arrest of Ms.
Johnson and The Manuels along with the SIS detectives and SWAT team
members, however, the identities, and reports from those Officers
who participated were never provided to Plaintiff's trial attorney
nor to him in exhibits #4 & #57 during state law entitlement §1054.9
proceedings, even though there was a request. (Exhibit #16)

Plaintiff obtained two civil lawsuits Los Angeles Superior Court
case numbers #BC002201 & #BC020272 and found a Log number to a Los
Angeles Police Department Personnel Complaint Internal Affairs Log
number IA #90-469M. (Exhibits #9, #10 & #11) If this Court were to
review Exhibits #9 & #10 it will see that Ms. Johnson and The Manuels
were physically assaulted, battered and threatened when they were
arrested by detectives (lead investigators) Jackson and Hedwall.

Plaintiff obtained the names of the detectives who were involved
in the arrest and/or assault and battery of Ms. Johnson and The
Manuels (Exhibit #12), however a review of the information provided
by the LADA's Office in exhibits #4 & #57 there is no mention of
suspects being beaten and suffocated nor are there any identities

Civil Rights Complaint
REQUEST FOR RELIEF CONTINUED

of the detectives included.

Most damaging is, Plaintiff recovered an award of arbitrator that showed in regards to The Manuels and Ms. Johnson's lawsuit an arbitrator ruled in their favor. (Exhibit #13) This ruling of the arbitrator was dated July 8, 1992, just 21 days before Plaintiff's July 29, 1992, trial yet there is no information provided in exhibits #4 & #57 that discuss this ruling.

PLaintiff observed that the LADA's Office deliberately withheld exculpatory/impechment evidence from his trial attorney and due to there being evidence that lead invetigators Jackson and Hedwall's misconduct was covered up Plaintiff prepared both a discovery request and pitchess motion to obtain evidence of exculpatory value (Exhibits #1, #16, #34 & #35) however, the LADA's Office has only provided those items listed in exhibits #4 & #57. In addition DDA Locke-Noble was made aware of these request on January 15, 2015 (Exhibit #16) however, she replied and refused to provide ANY discovery material.

Knowing that there are many items of exculpatory value that has NEVER been provided DDA Locke Noble prepared a proposed order to close Plaintiff's §1054.9 state law entitlement proceeding. (Exhibit #51) even though she was aware of the discovery request in exhibit #16 that she ignored. (Exhibit #17) On December 13, 2016, when DDA Locke-Noble stood before the Honorable Craig Richman, Judge and stated that Plaintiff received all of his discovery request and that due to there being no more discovery material to be provided she lied and misled the court in violation of Business and Professions Code §6068(d) and California Rules of Professional Conduct 5-200 where she and PLaintiff's appointed conspired to deprive him of evidence of exculpatory value depriving him of receiving discovery that he was legally entitled to have under state law entitlement §1054.9 where those withheld items have a direct impact on Plaintiff's 'Liberty Interest' thus violating the due process clause of the 14th Amendment to the United States Constitution.

### EXCLUSION FROM ABSOLUTE IMMUNITY

Plaintiff states that the California Legislature has passed a law that holds Prosecuting Attorneys liable to be prosecuted under Penal Code Section 141(c) if they are found to have intentionally and in bad faith withheld exculpatory material or information knowing that it is relevant and material to the outcome of a "PROCEEDING." State Law entitlement PC §1054.9 is a "SPECIAL PROCEEDING" and despite DDA Locke-Noble being made aware of the exculpatroy nature of the missing evidence that shows the lead investigators in Plaintiff's case participated in misconduct through PLaintiff's filings and exhibit #16, she has deliberately withheld

Civil Rights Complaint
REQUEST FOR RELIEF

material relevant to the outcome of Plaintiff's special proceeding
where the items requested have a direct impact on Plaintiff's 'Liberty
Interest' thus violating his due process under the 14th Amendment
to the US Constitution and state law entitlement §1054.9.

If this Courts finds DDA Locke-Noble through the Los Angeles
District Attorney's Office has deliberately withheld evidence during
his state law entitlement proceeding under 1054.9 where he is being
prevented from obtaining evidence to support his 'Liberty INterest'
Locke-Noble should be recommended for prosecution under state law
penal code section §141(c).

If Locke-Noble is prosecuted and found GUILTY for withholding
evidence Plaintiff reserves the right to sue for Punitive Damages
for withholding exculpatory evidence during a lawfully protected
state law proceeding under California Penal Code §1054.9 which is
protected and guraranteed by the 14th Amendment's due process
clause.

By this demand Plaintiff's request for punitive damages in the
amount of $27,000,000 is for the twenty seven (27) years that the
Los Angeles District Attorney's Office has deliberately withheld
exculpatory evidence from Plaintiff to cover up the misdeeds of one
of their own, that being, Deputy District Attorney Patricia Wilkinson
who prosecuted Plaintiff and who is now the Head Deputy District
Attorney of the Major Crimes Unit. The LADA's knows this evidence
was withheld (Exhibit #16 & #34 & #35) yet has deliberately withheld
the evidence and asked that Plaintiff's proceeding be closed to
prevent him from requesting and receiving evidence to prove his
innocence, where Plaintiff has been in prison for a crime that he
didnot commit and is being deprived of the materials to prove his
innocence.

This amount is also requested to punish the Los Angeles District
Attorney's Office for withholding evidence 27 years ago and for
its continuous deliberate withholding of exculpatory evidence despite
the California enacting penal code section §1054.9 to ensure inmates
sentenced to death and life without parole are allowed to receive
discovery that was improperly withheld. After the California Legislature
recently passed Assembly Bill 1909 to amend penal code section 141(c)
the Los Angeles District Attorney's continues to deliberately withhold
evidence and an example needs to be made.

(b)   $3,000,000 against County Appointed Attorney James S. Bisnow
of Pasadena to ensure that other attorneys similarly situated and
appointed to assist an innocent defendant are not degraded and work
against to prevent a defendant from obtaining discovery material to
help prove their innocence, and from preventing the next attorney(s)

Civil Rights Complaint
REQUEST FOR RELIEF

who represent an inmate during a §1054.9 state law entitlement pro-
ceeding from working with the Los Angeles District Attorney's Office
against their client and CONSPIRING with the LADA's Office and lie
andmislead the Court while deliberately trying to close a Plaintiff's
proceeding under a true falsehood.

WHEREFORE, Plaintiff Stevie J. Stevenson prays that this Court:

1.  Declare that the acts and omissions described herein violated
    Plaintiff's rights under the Constitution and laws of the
    United States and the State of California;

2.  Issue an Injunction ordering the defendants to abide by
    this Court's ruling

    Plaintiff will suffer Irreparable Injury and harm if
    the injunction is not granted allowing Plaintiff to
    submit his own discovery request and "Pitchess &
    Brady" motion along with being self represented.

    If Plaintiff is not able to submit his own discovery
    request and "Pitchess & Brady" motion he will be
    deprived of fundamental fairness and an equal
    opportunity to at least material information that
    has been deliberately withheld by the prosecution
    for the past 27 years, and Plaintiff will be forced
    to have his §1054.9 proceeding closed because his
    family and friends do not have the money to pay an
    attorney's hefty fees just to request materials that
    other inmates sentenced like Plaintiff are allowed
    to do on their own. (Exhibit #61);

3.  Order Defendants to pay compensatory and punitive
    damages;

4.  Order Defendants to pay reasonable fees and costs for
    Plaintiff having to pay the filing fee, copy costs,
    mailing costs for this 42 USC 1983; and

5.  Refer Los Angeles Deputy District Attorney Corene Locke-
    Noble to the District Attorney's Office for prosecution
    under California Penal Code §141(c) for violating
    Plaintiff's due process right during state law entitlement
    §1054.9 proceeding for deliberately withholding exculpatory
    impeachment evidence that is relevant to the subject
    matter regarding his 'Liberty Interest;'

Civil Rights Complaint
REQUEST FOR RELIEF


      6.    Grant other just and equitable relief that this
              Honorable Court deems necessary.


Respectfully and Truthfully Submitted,

                           4/26/2017

Mr. Stevie J. Stevenson
K-16324, A4-248L
Centinela State Prison
2302 Brown Road
Imperial, Ca. 92251-0901
In Pro-se

VERIFICATION

I, MR. STEVIE J. STEVENSON, declare as follows:

    I am the Plaintiff in this action. I have read the foregoing Title 42 U.S.C. §1983 in the case of Stevie J. Stevenson v. Los Angeles District Attorney's Office, et al., exhibits and attachments and the facts stated therein are true of my own personal knowledge, except as to the matters that are therein stated on my own information and belief, and as to those matters I believe them to be true.

    Pursuant to Title 28 U.S.C. §1746, I declare and verify under penalty of perjury under the laws of the United States of America that the foregoing is true and correct. Executed on April 26, 2017.

Mr. Stevie J. Stevenson
K-16324, A4-248L
Centinela State Prison
2302 Brown Road
Imperial, Ca. 92251-0901
In Pro-Se

UNITED STATES DISTRICT COURT
CENTRAL DISTRICT
WESTERN DIVISION

STEVIE J. STEVENSON

v.

LOS ANGELES SUPERIOR COURT,
LOS ANGELES DISTRICT ATTORNEYS OFFICE, ET AL,

Case Number:

PROOF OF SERVICE

I hereby certify that on WEDNESDAY APRIL 26, 2·17, I served a copy
of the attached 42 USC 1983 LAWSUIT, EXHIBITS #1-#61, AMPT, II AMPT

by placing a copy in a postage paid envelope addressed to the person(s) hereinafter

listed, by depositing said envelope in the United States Mail at
CENTINELA STATE PRISON, 2302 BROWN ROAD, IMPERIAL, CA. 92251

(List Name and Address of Each
Defendant or Attorney Served)

USDC
CENTRAL DISTRICT OF CALIFORNIA
312 N. SPRING STREET, ROOM G-8
LOS ANGELES, CA. 90012
ATTN: MR OF CLERK

I declare under penalty of perjury that the foregoing is true and correct.

KILSON AA 248
MR. STEVIE J. STEVENSON

(Signature of Person Completing Service)

7

JS 44 (Rev. 12/12)

# CIVIL COVER SHEET

The JS 44 civil cover sheet and the information contained herein neither replace nor supplement the filing and service of pleadings or other papers as required by law, except as provided by local rules of court. This form, approved by the Judicial Conference of the United States in September 1974, is required for the use of the Clerk of Court for the purpose of initiating the civil docket sheet. *(SEE INSTRUCTIONS ON NEXT PAGE OF THIS FORM.)*

## I. (a) PLAINTIFFS

Stevie J. Stevenson

**(b)** County of Residence of First Listed Plaintiff    Imperial
*(EXCEPT IN U.S. PLAINTIFF CASES)*

**(c)** Attorneys *(Firm Name, Address, and Telephone Number)*

## DEFENDANTS

Los Angeles DistrictAttorney's Office
Los Angeles County; Superior Court Judge
Craig Richman, et al Corene Locke-Noble

County of Residence of First Listed Defendant    Los Angeles
*(IN U.S. PLAINTIFF CASES ONLY)*
NOTE:   IN LAND CONDEMNATION CASES, USE THE LOCATION OF THE TRACT OF LAND INVOLVED.

Attorneys *(If Known)*

## II. BASIS OF JURISDICTION *(Place an "X" in One Box Only)*

- ☐ 1  U.S. Government Plaintiff
- ☒ 3  Federal Question *(U.S. Government Not a Party)*
- ☐ 2  U.S. Government Defendant
- ☐ 4  Diversity *(Indicate Citizenship of Parties in Item III)*

## III. CITIZENSHIP OF PRINCIPAL PARTIES *(Place an "X" in One Box for Plaintiff and One Box for Defendant)*
*(For Diversity Cases Only)*

|  | PTF | DEF |  | PTF | DEF |
|---|---|---|---|---|---|
| Citizen of This State | ☐ 1 | ☐ 1 | Incorporated or Principal Place of Business In This State | ☐ 4 | ☐ |
| Citizen of Another State | ☐ 2 | ☐ 2 | Incorporated and Principal Place of Business In Another State | ☐ 5 | ☐ |
| Citizen or Subject of a Foreign Country | ☐ 3 | ☐ 3 | Foreign Nation | ☐ 6 | ☐ |

## IV. NATURE OF SUIT *(Place an "X" in One Box Only)*

| CONTRACT | TORTS | | FORFEITURE/PENALTY | BANKRUPTCY | OTHER STATUTES |
|---|---|---|---|---|---|
| ☐ 110 Insurance<br>☐ 120 Marine<br>☐ 130 Miller Act<br>☐ 140 Negotiable Instrument<br>☐ 150 Recovery of Overpayment & Enforcement of Judgment<br>☐ 151 Medicare Act<br>☐ 152 Recovery of Defaulted Student Loans (Excludes Veterans)<br>☐ 153 Recovery of Overpayment of Veteran's Benefits<br>☐ 160 Stockholders' Suits<br>☐ 190 Other Contract<br>☐ 195 Contract Product Liability<br>☐ 196 Franchise | **PERSONAL INJURY**<br>☐ 310 Airplane<br>☐ 315 Airplane Product Liability<br>☐ 320 Assault, Libel & Slander<br>☐ 330 Federal Employers' Liability<br>☐ 340 Marine<br>☐ 345 Marine Product Liability<br>☐ 350 Motor Vehicle<br>☐ 355 Motor Vehicle Product Liability<br>☐ 360 Other Personal Injury<br>☐ 362 Personal Injury - Medical Malpractice | **PERSONAL INJURY**<br>☐ 365 Personal Injury - Product Liability<br>☐ 367 Health Care/ Pharmaceutical Personal Injury Product Liability<br>☐ 368 Asbestos Personal Injury Product Liability<br>**PERSONAL PROPERTY**<br>☐ 370 Other Fraud<br>☐ 371 Truth in Lending<br>☐ 380 Other Personal Property Damage<br>☐ 385 Property Damage Product Liability | ☐ 625 Drug Related Seizure of Property 21 USC 881<br>☐ 690 Other | ☐ 422 Appeal 28 USC 158<br>☐ 423 Withdrawal 28 USC 157<br>**PROPERTY RIGHTS**<br>☐ 820 Copyrights<br>☐ 830 Patent<br>☐ 840 Trademark<br>**SOCIAL SECURITY**<br>☐ 861 HIA (1395ff)<br>☐ 862 Black Lung (923)<br>☐ 863 DIWC/DIWW (405(g))<br>☐ 864 SSID Title XVI<br>☐ 865 RSI (405(g)) | ☐ 375 False Claims Act<br>☐ 400 State Reapportionment<br>☐ 410 Antitrust<br>☐ 430 Banks and Banking<br>☐ 450 Commerce<br>☐ 460 Deportation<br>☐ 470 Racketeer Influenced and Corrupt Organizations<br>☐ 480 Consumer Credit<br>☐ 490 Cable/Sat TV<br>☐ 850 Securities/Commodities/ Exchange<br>☐ 890 Other Statutory Actions<br>☐ 891 Agricultural Acts<br>☐ 893 Environmental Matters<br>☐ 895 Freedom of Information Act<br>☐ 896 Arbitration<br>☐ 899 Administrative Procedure Act/Review or Appeal of Agency Decision<br>☐ 950 Constitutionality of State Statutes |
| **REAL PROPERTY**<br>☐ 210 Land Condemnation<br>☐ 220 Foreclosure<br>☐ 230 Rent Lease & Ejectment<br>☐ 240 Torts to Land<br>☐ 245 Tort Product Liability<br>☐ 290 All Other Real Property | **CIVIL RIGHTS**<br>☐ 440 Other Civil Rights<br>☐ 441 Voting<br>☐ 442 Employment<br>☐ 443 Housing/ Accommodations<br>☐ 445 Amer. w/Disabilities - Employment<br>☐ 446 Amer. w/Disabilities - Other<br>☐ 448 Education | **PRISONER PETITIONS**<br>**Habeas Corpus:**<br>☐ 463 Alien Detainee<br>☐ 510 Motions to Vacate Sentence<br>☐ 530 General<br>☐ 535 Death Penalty<br>**Other:**<br>☐ 540 Mandamus & Other<br>☒ 550 Civil Rights<br>☐ 555 Prison Condition<br>☐ 560 Civil Detainee - Conditions of Confinement | **LABOR**<br>☐ 710 Fair Labor Standards Act<br>☐ 720 Labor Management Relations<br>☐ 740 Railway Labor Act<br>☐ 751 Family and Medical Leave Act<br>☐ 790 Other Labor Litigation<br>☐ 791 Employee Retirement Income Security Act<br>**IMMIGRATION**<br>☐ 462 Naturalization Application<br>☐ 465 Other Immigration Actions | **FEDERAL TAX SUITS**<br>☐ 870 Taxes (U.S. Plaintiff or Defendant)<br>☐ 871 IRS—Third Party 26 USC 7609 | |

## V. ORIGIN *(Place an "X" in One Box Only)*

- ☒ 1  Original Proceeding
- ☐ 2  Removed from State Court
- ☐ 3  Remanded from Appellate Court
- ☐ 4  Reinstated or Reopened
- ☐ 5  Transferred from Another District *(specify)*
- ☐ 6  Multidistrict Litigation

## VI. CAUSE OF ACTION

Cite the U.S. Civil Statute under which you are filing *(Do not cite jurisdictional statutes unless diversity)*:
42 U.S.C. §1983
Brief description of cause:
Denial Due Process Equal Protection (state law entitlement "Liberty Interest"

## VII. REQUESTED IN COMPLAINT:

☐ CHECK IF THIS IS A CLASS ACTION UNDER RULE 23, F.R.Cv.P.
DEMAND $ $1,000,000    comp, punitive, Injc, Declatory
CHECK YES only if demanded in complaint:
JURY DEMAND:   ☒ Yes   ☐ No

## VIII. RELATED CASE(S) IF ANY

*(See instructions):*
JUDGE _____    DOCKET NUMBER _____

DATE  April 26, 2017    SIGNATURE OF ATTORNEY OF RECORD  *(signature)*

**FOR OFFICE USE ONLY**

RECEIPT #_____   AMOUNT_____   APPLYING IFP_____   JUDGE_____   MAG. JUDGE_____

# EXHIBIT



Exhibit ▓▓▓▓ #4

Stevie J. Stevenson
K-16324, C4-222L
Centinela State Prison
2302 Brown Road
Imperial, Ca. 92251-0921
In Pro-Per

SUPERIOR COURT OF CALIFORNIA

COUNTY OF LOS ANGELES

Stevie Stevenson                      )
          Petitioner                  )   Related Case No:BA011908
                                      )
     v.                               )   Notice Of Motion For Discovery
                                      )   Material Pursuant To Cal. Penal
People Of The State Of California     )   Code Sec. 1054.9
          Respondent                  )
_____      )

     TO THE PRESIDING JUDGE AND CLERK OF THE LOS ANGELES SUPERIOR
COURT AND THE DISTRICT ATTORNEY OF LOS ANGELES AND ITS REPRESENTATIVE

     Pleasetake notice that Petitioner, Stevie Stevenson, moves

this Honorable Trial Court for an order allowing access to "All"

discovery material for Post Conviction writ of Habeas Corpus under

California Penal Code Section 1054.9.


     This motion will be made on the ground that the Los Angeles

County District Attorney's Office has in its actual or constructive

possession items of evidence which Petitioner is entitled to under

Penal Code Section 1054.9 (a), (b), (c) and (d).

     Penal Code 1054.9(a) states:

        "Upon the prosecution of a post conviction writ

of habeas corpus or a motion to vacate a judg-
ment in a case in which a sentence of death or
of Life in Prison Without The POssibility Of
Parole has been imposed, and on a showing that
good faith efforts to obtain discovery materials
from trial counsel were made and were unsuccessful
the Court shall... order that the Defendant (Peti-
tioner) be provided reasonable access to any of
the materials described in subdivision (b)."

Penal Code 1054.9(b) states:

"For purposes of subdivision (b) of PC 1054.9"

'Discovery materials means materials in the possession
of the prosecution and law enforcement authorities
to which the same defendant (Petitioner) would
have been entitled at time of trial.'

The Due Process, Federal and State Constitution; U.S. Consti-
tution 14th Amendment and California Constitution, Article I Section
7(a) requires the disclosure to Petitioner Stevie Stevenson of
"evidence favorable to Him" that is "Material either to guilt
or punishment". Brady v. Maryland, 373 US 83, 87, 83 S.Ct. 1194,
1196, 10 L.Ed.2d 215, 218 (1963); U.S. v. Bagley, 473 US 667,
676, 105 S.Ct. 3375, 3380, 87 L.Ed.2d 481, 490 (1985).

The California Supreme Court held in In Re Steele, (2004)
10 Cal.Rptr. 3d 536, 32 Cal 4th 682, 85 P.3d 444, that Cal Penal
Code 1054.9 entitled persons who were preparing a Habeas Corpus
petition, as well as persons who had already filed such a petition,
to seek discovery. Steele, 32 Cal. 4th at 691.

The Court further held that Penal code Section 1054.9 authorized
discovery of three categories of information: (1) Discovery that the
prosecutor provided to the defense but has become lost to the
Petitioner; (2) Discovery that the prosecutor should have provided

but failed to do so; (3) Discovery to which the defense would
have been entitled had it requested the information. <u>Steele</u>, Id.
at 692.

Petitioner states that he is currently serving a sentence
of Life Without The Possibility Of Parole for a Kidnap For Ransom
conviction under Penal Code 209(a). (See Exhibit #1)

Petitioner's trial counsel, John J. Cheroske, is a superior
Court Judge in the City of Compton California. The appellate attorney
who represented Petitioner received the trial file (discovery)
in April of 1994. (See Exhibit #2 ¶ 5-6)

Material and Substantial evidence has been uncovered that
proves that false testimony was used to convict Petitioner in
violation of cal Penal Code 1473 and the 14th Amendment of the
U.S. Constitution and all discovery is needed in order to properly
submit a writ of habeas corpus. Petitioner states that over the
years of incarceration between both the Federal and State jurisdic-
tions his legal work (discovery/affidavits etc.) has been lost
and or thrown away by staff.

Petitioner respectfully prays that this Honorable Court will
order the release of the following material under the discovery
rule as stated in Penal Code Section 1054.9(b) and (c) for case
No: BA011908 and the Los Angeles and San Diego Regional Officers
Report Case Number 900706185 dated January 19, 1990 and January
23, 1990:

(1) Crime scene photos

(2) Police Reports (From San Diego & Los Angeles)

(3) A list of all items collected and logged in as evidence

(4) All motions filed by trial counsel before trial court

(5) A list of names of all witnesses who were interviewed by the police and the District Attorney's Office for the city of Los Angeles and san Diego

(6) Copy of all trial court's minute orders

(7) transcripts of tape recorded conversations of all witnesses from Los Angeles and San Diego

(8) Copy of all criminal lab experts test results

(9) Copy of all original notes of both San Diego and Los Angeles police interviews of all witnesses for case number 900706185

(10) Copy of all original notes of the district Attorney's interview of witnesses in both San Diego and Los Angeles

(11) All transcripts from any and all court proceedings of Kevin Richardson, co-defendant for case No: BA0 11908

(12) All written and/or recorded interviews (police reports) forcase No: 900706185 by police officers in both San Diego and Los Angeles of Tracey Gosha, LaTanya Johnson, Kevin richardson, Charles Mc Math and the victim Melvin rodriguez.

(13) Any and All discovery materials in relationship to the case matter of People v. Stevenson Case Number BA011908 that Petitioner failed to mention, list and or specifically request herein.


Based on this motion  it is the hope of Petitioner that this

court grant all Brady material pursuant to Penal code Section

1054.9 and Caitlin v. Superior Court, 120 Cal.Rptr.3d 135, 139 (2011).

Respectfully Submitted

Dated: _AUGUST 9, 2012_ , 2012

Stevie Stevenson
K-16324, C4-222L
In Pro Per

<u>VERIFICATION</u>

    I declare under the penalty of perjury under the laws of the State of California that the foregoing is true and correct.

Executed this _____9TH_____ day of _____AUGUST_____ 2012, at Centinela State Prison in Imperial California.


                    Respectfully Submitted


                    Stevie Stevenson
                    K-16324, C4-222L
                    Centinela State Prison
                    2302 Brown Road
                    Imperial, Ca. 92251-0921
                    In Pro-Per

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF CALIFORNIA

STEVIE STEVENSON
PETITIONER

v.

PEOPLE OF THE STATE OF CALIFORNIA
RESPONDENT

Case Number:
RELATED CASE NUMBER: B4011908

PROOF OF SERVICE

I hereby certify that on ___August 9, 2012___, I served a copy
of the attached MOTION OF NOTICE FOR DISCOVERY MATERIAL PURSUANT TO CAL PENAL CODE SECTION
1054.9
by placing a copy in a postage paid envelope addressed to the person(s) hereinafter

listed, by depositing said envelope in the United States Mail at
CENTINELA STATE PRISON, IMPERIAL, CA. 92251-0921

(List Name and Address of Each
Defendant or Attorney Served)
SUPERIOR COURT OF CALIFORNIA COUNTY OF LOS ANGELES
210 W. TEMPLE STREET
LOS ANGELES, CA. 90012-3210
CLERK OF COURT

I declare under penalty of perjury that the foregoing is true and correct.

_____ K16324
MR. STEVIE STEVENSON
(Signature of Person Completing Service)

# EXHIBIT

#2

## DECLARATION OF VENITA RAY

I, VENITA RAY, declare as follows:

1.  I am an attorney licensed to practice law in the District of Columbia (inactive), Maryland (inactive), and Texas (active).

2.  For a number of years, I have provided assistance to Mr. Stevie Stevenson in his appeal from a 1990 conviction for aggravated kidnapping and a life without possibility of parole sentence.

3.  On or about late 2000 or early 2001, Mr. Stevenson informed me that he had a brief encounter with an inmate by the name of Andre' Burks when they were held in the same holding cell for a few hours in 1997. Mr. Stevenson stated that during their conversation they discovered that they both knew a woman named Tracey Gosha from San Diego, CA. It was also during this conversation that Mr. Burks discovered that Mr. Stevenson was the person that Ms. Gosha had told him that she falsely identified as LA Mike when she testified against Mr. Stevenson at his criminal trial. Mr. Burks stated that Ms. Gosha told him that the police had coerced her to testify falsely against Mr. Stevenson. This was Mr. Stevenson's first and only contact with Mr. Burks.

4.  In early 2001 I located Mr. Burks and contacted him by mail at a California Department of Correction Facility in Crescent City, CA. In my letter, I introduced myself and asked Mr. Burks if he had any knowledge or information about Mr. Stevenson's case and/or conviction. I had never met Mr. Burks before.

5.  In his reply letter to me, Mr. Burks stated that he had some knowledge of facts related to Mr. Stevenson's case that he had learned from statements made to him by Tracey Gosha. He knew Tracey Gosha because she was the roommate of a former girlfriend, Princess Goines. Ms. Gosha was a key prosecution witness against Mr. Stevenson at his trial.

6.  Over the next several months, I corresponded with Mr. Burks to determine the details of Mr. Burks' knowledge of Mr. Stevenson's case. Mr. Burks stated that, on or about the early months of 1990, during one of his visits with his girlfriend, Princess Goines, Tracey

Gosha told him about an ongoing criminal case she was involved in concerning a person called L.A. Mike. According to Ms. Gosha, the police were pressuring her to testify against this person even though she had told them that she did not know anything about the case. Ms. Gosha stated that the police told her that if she did not say what they wanted her to say; she would go to jail for twenty (20) years and her son would be placed in a foster home. Ms. Gosha told Mr. Burks that the police made her aware of the statements being made by the co-defendants in the case and that she finally just agreed with the statements. Ms. Gosha stated that she lied during her testimony at Mr. Stevenson's trial after being threatened by the police that she would go to jail and lose custody of her son if she did not say what they wanted her to say.

7. I asked Mr. Burks if he would be willing to prepare and sign an affidavit that would document what he learned from Tracey Gosha about Mr. Stevenson's case and Mr. Burks agreed.

8. Mr. Burks and I corresponded back and forth until he completed the affidavit. On or about October 15, 2001, I mailed the final draft of the affidavit to Mr. Burks along with a $20 money order with instructions to the affidavit notarized. Mr. Burks returned the signed affidavit to me without it being notarized. I attempted to contact Mr. Burks again and when I did not hear from Mr. Burks, I contacted prison officials. Prison officials informed me that Mr. Burks had committed suicide.

9. In 2007, I mailed the original affidavit signed by Mr. Burks to Mr. Stevenson's niece, Ms. Kis'Mah Kendalla. I later learned that Ms. Kendalla mailed the original signed affidavit to Mr. Stevenson but he never received it. The original affidavit was either lost in the mail or misplaced by prison officials.

10. The attached unsigned affidavit is the result of my correspondence with Mr. Burks and contains information he learned from Ms. Gosha regarding the police's action in coercing her to testify falsely at Mr. Stevenson's trial.

I have personal knowledge of the foregoing facts and if called as a witness, could testify

completely and truthfully to the statements contained in this declaration.  I hereby declare under penalty of perjury that the foregoing is true and correct under the laws of the State of Texas.

Executed this 1st day of July, 2012.

VENITA RAY

Exhibit #6

Venita Ray, Esq
317 T Street, NE
Washington, DC 20002
(202) 636-6027

October 15, 2001

Andre Burks #K30314
P.B.S.P. D3/101L
P.O. Box 7500
Crescent City, CA 95532

Dear Mr. Burks:

I hope this letter finds you in good health and at the same institution.  I apologize for my delay in writing you back.  Enclosed you will find the affidavit and a $20 money order to help get it notarized.  Please note my new address is 317 T Street, NE, Washington, DC 20002.

I look forward to hearing from you soon.

Sincerely,

Venita Ray

Exhibit #6

STATE OF CALIFORNIA V. STEVIE STEVENSON

AFFIDAVIT OF ANDRE BURKS

I, ANDRE BURKS, first being duly sworn on oath according to law, deposes and says:

1.     On or about the early months of 1990, I, Andre Burks, had a girlfriend named Princess Goines who lived at 4677 Home Avenue #87, San Diego, California.  At the time, my girlfriend had a roommate named Tracey Gosha. I frequently stayed over at my girlfriend's house.  All of the following statements were stated to Princess Goines, Lamont Hoke, and myself.

2.     During this period of time, Ms. Gosha told us about a criminal case involving a person named "L.A. Mike."  Ms. Gosha stated that she didn't know anything about the case but that Mike's co-defendants were making deals with the District Attorney to put all the blame on Mike.

3.     Ms. Gosha stated that when the police approached her to testify in the case and she told them that she did not know anything and didn't want to get involved   Ms. Gosha also stated that the police told her that if she did not tell them what they wanted to hear that she would go to jail for twenty (20) years and her son would be put in a foster home.

4.     Ms. Gosha stated that the police made her aware of the statements made by the co-defendants and that she finally just agreed with the

EXHIBIT #6

statements. Ms. Gosha stated that she had decided that she was not going to lose her son and that she lied during her testimony at the trial to keep him. I also recall Ms. Gosha telling us that the police took Ms. Gosha to stay in a hotel while she was testifying and gave her money to fix her car.

5.    At the time of these incidents, I did not know Mr. Stevenson. I later met Mr. Stevenson while being held in the same holding cell at High Desert State Prison for approximately three (3) hours. It was only during our brief conversation together that we realized that Mr. Stevenson was the person Ms. Gosha knew as L.A. Mike. Mr. Stevenson and I were both moved to different correctional facilities and have not had contact in almost four (4) years.

6.    This was my first and only contact with Mr. Stevenson and since that time have had no further contact in person or through any type of correspondence.


Further Affiant sayeth not.


ANDRE BURKS


SUBSCRIBED AND SWORN to before me this _____ day of _____, 2001.

EXHIBIT #G

_____

Notary Public

My Commission Expires _____ __ _____

# EXHIBIT



EXHIBIT #7

### KAYE, McLANE, BEDNARSKI & LITT, LLP
ATTORNEYS AT LAW
234 East Colorado Boulevard, Suite 230
Pasadena, California 91101
Phone: 626-844-7660
Fax: 626-844-7670

RONALD O. KAYE
DAVID S. McLANE
MARILYN E. BEDNARSKI
BARRETT S. LITT

KEVIN LaHUE
CAITLIN S. WEISBERG
LINDSAY BATTLES

*Of Counsel*
CARLTON F. GUNN

Via U.S. Mail

September 26, 2013

**LEGAL MAIL**

Mr. Stevie Stevenson
CDCR#K16324
California State Prison, Centinela (CEN)
C1 229 Low
P.O. Box 921
Imperial, CA 92251-921

Re:   Declaration of Kevin Richardson

Dear Mr. Stevenson:

Please find enclosed the declaration of Mr. Kevin Richardson recanting his prior testimony against you. This document was provided to our offices by Mr. Rodney Oliver in the hopes it can assist you in exonerating your wrongful conviction.

At this time we are not retained to file a writ of habeas corpus nor further assist you with any legal remedies you may have regarding your conviction. There are numerous statutory timeframes that apply to state and federal writs of habeas corpus and we recommend that you file as soon as practicable so that any claim you may have is not beyond the applicable statute of limitations.

If you or someone on the outside would like to contact me regarding this matter further please do so at the address or phone number above.

I hope this finds you well and wish you the best of luck

Sincerely yours,

Kevin J. LaHue
Attorney at Law
Kaye, McLane & Bednarski, LLP

DECLARATION OF KEVIN RICHARDSON

I, Kevin Richardson, declare under penalty of perjury as follows:

1. In July 1992, I testified as a witness for the prosecution against Stevie Stevenson who at that time, was on trial for the crime of kidnap for ransom with personal use of a firearm.

2. Back in 1990, I had known Stevie Stevenson many years, having grown up with him.

3. Prior to trial, I was threatened by Michael Thompson (AKA Baby Boy), Patrick Johnson (AKA Half-Dead), Richard last name unknown (AKA Bubba), Gary Oliver and Nobie Kennedy (AKA No-Bone). It was these five men, and not Stevie Stevenson, who committed the crime for which Mr. Stevenson was charged and convicted. These men threatened to kill me, and my family unless I testified and blamed everything on Stevie Stevenson.

4. The threats continued before, during and after the trial of Stevie Stevenson to the point where I eventually moved from Los Angeles to Las Vegas to get away from the people who were threatening me and my family.

5. Over the years, knowing that Stevie Stevenson was sent to prison for a crime he did not commit has weighed heavy on my mind. I was always afraid to come forward and speak the truth because I was scared Michael Thompson (Baby Boy), Patrick Johnson (Half-Dead), Gary Oliver, Richard (unknown last name, AKA Bubba) and Nobie Kennedy (No-Bone) would make good on their promise to kill me and my family if I ever told police the truth.

6. The reason I have waited so long to come forward with the truth and my recantation, is mostly due to my fear of continued threats. I have now come forward due to my religious beliefs which have become stronger after I had heart failure and almost died in April 2005. Since I felt God had given me a second chance in life, I felt compelled to finally tell the truth about my false and inaccurate testimony at the trial of Stevie Stevenson.

7. At Stevie Stevenson's trial, I testified that on January 19, 1990, Stevie Stevenson had asked me to help him move from San Diego back to Los Angeles. The truth is, on that day, Michael Thompson (Baby Boy) called me and asked me to follow him down to San Diego to pick up some drugs from Stevie Stevenson and bring the drugs back to Los Angeles. I had met Michael Thompson AKA Baby Boy and others, from delivering drugs to them for Stevie Stevenson.

8. At approximately 6:30 a.m. on January 19, 1990, Michael Thompson (Baby Boy) met me at my father's house driving a blue Suburban with Nobie Kennedy (No-Bone) sitting in the passenger's seat. Also, there was a second car, a white Regal, with Patrick Johnson (Half-Dead) sitting in the

driver's seat. Michael Thompson (Baby Boy) asked me could this young kid ride with me and I said yes.

9.  It took us about two and a half to three hours to drive down from Los Angeles to San Diego. Once in San Diego we went to an apartment building. I parked on the street in front of the apartment building and Michael Thompson (Baby Boy) along with Patrick Johnson (Half-Dead) parked in the apartment's building garage. After waiting a few hours Michael Thompson (Baby Boy) came out of the garage still driving the Suburban and asked me to follow him to McDonald's.

10. Once back at the apartment Michael Thompson (Baby Boy) parked in the garage and I parked on the street. After a few more hours, Michael Thompson (Baby Boy) and Patrick Johnson (Half-Dead) and I drove to another apartment building. Michael Thompson (Baby Boy) parked in the apartment stall and Patrick Johnson (Half-Dead) and I parked on the street.

11. A few minutes later Michael Thompson (Baby Boy) got out of the Suburban and walked next to a female and went into this apartment building. Michael Thompson (Baby Boy) came out a few minutes later and got into the Suburban.

12. Thirty minutes later, Stevie Stevenson appeared and Michael Thompson (Baby Boy) along with Nobie Kennedy (No-Bone) exited the Suburban and began talking. Myself, Patrick Johnson (Half-Dead), Gary Oliver, and Richard, last name unknown AKA Bubba got out of the cars and walked over to where Stevie Stevenson, Nobie Kennedy (No-Bone) and Michael Thompson (Baby Boy) stood talking. Either Michael Thompson (Baby Boy) or Nobie Kennedy (No-Bone) motioned to Stevie Stevenson to look inside the Suburban. Stevie Stevenson looked inside, shook his head and was very angry at what he saw.

13. I overheard Stevie Stevenson arguing and cursing at Nobie Kennedy (No-Bone), Michael Thompson (Baby Boy), Patrick Johnson (Half-Dead), Gary Oliver and Richard, last name unknown AKA Bubba because they came to a location that Stevie Stevenson was known to hang out, with a man tied up inside a Suburban. Stevie Stevenson then looked at Michael Thompson (Baby Boy), Patrick Johnson (Half-Dead), Gary Oliver, Richard last name unknown AKA Bubba and Nobie Kennedy (No-Bone), and warned them that he, meaning Stevie would hurt them if he and/or his family became involved or blamed for their wrongdoing.

14. Since I was not involved in what was happening, Stevie Stevenson looked at me and said, "Kevin, this is none of your business, get back into the Jeep." A little while later Tracy drove up. Stevie Stevenson spoke to Tracy and then walked with her over to the Suburban where she too looked inside the Suburban.

15. I exited the Jeep again and walked over to the Suburban to find out what was happening at which point I, also looked inside and saw a man tied up. Stevie Stevenson told me, "Kevin, this is

none of your business. This has to do with Michael Thompson (Baby Boy), Patrick Johnson (Half-Dead), Gary Oliver, Nobie Kennedy (No-Bone) and Richard, last name unknown AKA Bubba and these Columbians."

16. Stevie Stevenson gave me money for gas so I could drive back to Los Angeles. Stevie Stevenson then angrily said to Michael Thompson (Baby Boy), "get that fool up out of here", meaning, he wanted the guy in the Suburban moved from in front of the location where Stevie Stevenson often hung out. Stevie Stevenson then left very angry at Michael Thompson (Baby Boy), Patrick Johnson (Half-Dead), Nobie Kennedy (No-Bone), Gary Oliver and Richard, last name unknown AKA Bubba because they had gotten Stevie involved in whatever they had going on with the Columbians.

17. When Stevie Stevenson drove away, Michael Thompson (Baby Boy) said that if things went bad and if anyone got arrested, we meaning myself, Nobie Kennedy (No-Bone), Patrick Johnson - (Half-Dead), Gary Oliver, and Richard, last name unknown AKA Bubba better blame everything on Stevie Stevenson. Because Stevie Stevenson had threatened to hurt them all for getting him and his family involved.

18. Michael Thompson (Baby Boy), Nobie Kennedy (No-Bone) and Patrick Johnson (Half-Dead) knowing my closeness to Stevie, specifically threatened me by promising to kill me, my girlfriend Tina Bumphrey, my sons Kevin Jr. and Sean, my father, my sister Katrina and my brother Dion, if I ever told anyone, especially the police, about anything that had gone on that day.

19. Michael Thompson (Baby Boy) then told me to get Tracy and park down the street and wait for him. While waiting on Michael Thompson (Baby Boy), the police showed up and handcuffed me and the young kid, but they allowed Tracy to go home. After a few questions, the young kid and I were released.

20. I got back in the Jeep and immediately began heading for the freeway to drive back to Los Angeles, when Patrick Johnson (Half-Dead), driving his Regal, pulled on the side of me and told me to pull over. When I pulled over, Michael Thompson (Baby Boy) and Nobie Kennedy (No-Bone) exited Patrick Johnson's (Half-Dead's) Regal and told me and the youngster to get in the backseat of the Jeep.

21. Michael Thompson (Baby Boy) drove the Jeep to Tracy's apartment. Michael Thompson (Baby Boy) and Nobie Kennedy (No-Bone) said they saw me and Tracy talking to the police and they threatened to kill me and my family if I had told police anything. I assured them I had not said a word about anything to the police. Once we arrived at Tracy's apartment, Patrick Johnson (Half-Dead) and Richard, last name unknown AKA Bubba took me and the youngster to Tracy's apartment. Richard, last name unknown AKA Bubba then went to talk to Tracy in her room for a while.

22. Richard, last name unknown AKA Bubba came out of the room with Tracy and told me and the kid that he and Patrick Johnson (Half-Dead) were leaving to take care of some business and would return to drive me and the youngster back to Los Angeles.

23. A few minutes after Richard, last name unknown AKA Bubba and Patrick Johnson (Half-Dead) left, police arrived and arrested me. When interviewed, I blamed everything on Stevie Stevenson because of the threats I had received from Michael Thompson (Baby Boy), Patrick Johnson (Half-Dead), Gary Oliver, Nobie Kennedy (No-Bone) and Richard, last name unknown AKA Bubba.

24. While in the county jail and in prison, people came up to me and warned me that I could be touched in jail if I didn't follow what Michael Thompson (Baby Boy), Patrick Johnson (Half-Dead), Nobie Kennedy (No-Bone), Gary Oliver and Richard, last name unknown AKA Bubba had told me.

25. When I was scheduled to testify at Stevie Stevenson's trial, Michael Thompson (Baby Boy), Nobie Kennedy (No-Bone), Patrick Johnson (Half-Dead), Gary Oliver and Richard, last name unknown AKA Bubba approached me everywhere I went and threatened to kill me and my family unless I continued to blame everything on Stevie Stevenson.

26. I was very scared to tell the truth. At the time Stevie Stevenson went to trial, I lied on him and identified him as Mike, due to the death threats I was receiving. However, due to my brush with death and God giving me a second chance at life, and me being a God fearing Christian, enough time has passed that I feel compelled to set the record straight. With the assistance of my family pastor, I want to tell the truth about what really happened and that Stevie Stevenson had nothing to do with the man tied up in the back of the Suburban that Michael Thompson (Baby Boy) was driving.

I declare under penalty of perjury that the following is true and correct.

Executed this 14th day of August, 2013

Kevin C. Richardson

State of Nevada
County of Clark
Subscribed and sworn before me on this 14th day of
august 2013

by _____
Notary Public in and for said county and state.


GABRIELLA RUSSOMANNO
NOTARY PUBLIC
STATE OF NEVADA
My Commission Expires: 9-27-2014
Certificate No: 06-109122-1

STATE OF NEVADA    )
                          )    ss.

COUNTY OF CLARK    )

COMES NOW your Affiant, being first duly sworn and deposes and says:

1.    At all relevant times herein, I was employed as an Investigator by Elite Investigations, Inc., Private Investigator's License Number 873, and performed a wide variety of activities in the scope and course of my job duties, including performing Investigations.

2.    I have personal knowledge of the facts referenced herein, and if called as a witness could testify competently thereto.

3.    That I was asked by my employer to audio and video record the testimony of Kevin Richardson at our offices located in Las Vegas, Nevada.

4.    The master videorecording produced by the office of Elite Investigations, Inc. for the period of August 14, 2013, represents full, complete and unedited videorecording of Kevin Richardson for the time period referenced herein and is held securely within the archives of Elite Investigations, Inc. The images captured on the videorecording are an accurate representation of the scene at the time it was captured.

//

//

//

//

//

//

5.    The master videorecording consists of a total of 10 minutes and 20
seconds and contains following date(s):

DATE:                          INVESTIGATOR:

8/14/13                        Jennifer Knight

FURTHER YOUR AFFIANT SAYETH NAUGHT.

DATED: 8|14|13 _____                    _____
                                                  Jennifer Knight

State of Nevada

County of Clark

Subscribed and sworn to before
me this 14th day of August, 2013, by  Jennifer Knight

_____
Notary Public in and for said county and state.

# EXHIBIT

# #3A

## Affidavit of JuTaun Sanders

I the undersigned, JUTAUN SANDERS, do hereby swear, certify and affirm that:
→ DoB 11-30-68

1. I am over the age of 18 and am a resident of the State of California. I currently reside at 248 Buckhorn Ave, Apt. #4 Inglewood, CA. I have personal knowledge of the facts herein, and, if called as a witness, could testify completely thereto.

2. I suffer no legal disabilities and have personal knowledge of the facts set forth below.

3. On September 30, 1993, while in Los Angeles California I signed the attached declaration regarding the conversation I had with Kevin Richardson in 1992 regarding his life being threatened by people forcing him to lie on Stevie Stevenson at his trial. I reiterate and stand by those statements documented in the attached declaration given in 1993.(see attachment#1)

4. I grew up with Stevie Stevenson and have known him since I was two years old. I also grew up with Kevin Richardson and have known him for many years.  SINCE 1971

5. Prior to the trial for Stevie Stevenson, I had a conversation with Kevin Richardson. This conversation occurred at Ted Auto Parts where Kevin Richardson was then working. Kevin Richardson told me that two detectives had given him a subpoena to testify at Stevie Stevenson's trial. Kevin Richardson told me that someone had threatened both he and his girlfriend and that he did not want to testify.

6. After Stevie Stevenson was convicted, I had another conversation with Kevin Richardson, I asked him whether he testified for Stevie Stevenson, at which time Kevin Richardson told me he had testified against Stevie Stevenson. I asked Kevin Richardson why he did that and he stated that he testified the way he did because someone had threatened him. Kevin Richardson did not tell me the name (s) of the individual (s) who had threatened him to testify at Stevie Stevenson's trial.

7. In January of 1990, I was pregnant with my twins. I recall that Stevie Stevenson did not live in Los Angeles at the time. In fact, for several years prior to 1990, Stevenson did not live in city of Los Angeles.

8. I spoke to Stevie Stevenson every month.  He would call me from places outside of Los Angeles and then leave his phone number with me so I could call him back.  The phone numbers he gave me were not Los Angeles area phone numbers.  I spoke to Stevie Stevenson in January, 1990 although I do not recall the specific day at this point in time.

I declare under the penalty of perjury that the foregoing is true and correct.

Executed on this ___4th___ day of __April__, 20_15_.


X _Sander_
JuTuan Sanders


X  Robe
Robert Freeman

*EXHIBIT #3*

## DECLARATION OF JATAUN SANDERS

I, Jataun Sanders, declare as follows:

1.  I grew up with Stevie Stevenson and have known him since I was two years old.  I also grew up with Kevin Richardson and have known him for many years.

2.  Prior to the trial of Stevie Stevenson, I had a conversation with Kevin Richardson.  This conversation occurred at Ted Auto Parts where Kevin Richardson was then working.  Kevin Richardson told me that two detectives had given him a subpoena to testify at Stevie Stevenson's trial.  Kevin Richardson told me that someone had threatened both he and his girlfriend and that he did not want to testify.

3.  After Stevie Stevenson was convicted, I had another conversation with Kevin Richardson.  I asked him whether he testified for Stevie Stevenson at which time Kevin Richardson told me he had testified _against_ Stevie Stevenson.  I asked Kevin Richardson why he did that and he stated that he testified the way he did because someone had threatened him.  Kevin Richardson did not tell me the name(s) of the individual(s) who had threatened him to testify at Stevie Stevenson's trial.

4.  In January 1990 I was pregnant with my twins.  I recall that Stevie Stevenson did not live in Los Angeles at the time.  In fact, for several years prior to 1990, Stevie Stevenson did not live in Los Angeles.

//

- 1 -

EXHIBIT #3

5.   I spoke to Stevie Stevenson regularly every month.  He would call me from places outside of Los Angeles and then leave his phone number with me so I could call him back.  The phone numbers he gave me were not Los Angeles area phone numbers.  I spoke to Stevie Stevenson in January, 1990, although I do not recall the specific day at this point in time.

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 30 day of September, 1993, at Los Angeles, California.

JATAUN SANDERS

# EXHIBIT

# #4

310 207 4014

# POST CONVICTION ASSISTANCE CENTER
### A Professional Law Corporation
12424 Wilshire Blvd., Suite 620
Los Angeles, CA 90025

CHRISTA M. HOHMANN, DIRECTING ATTORNEY
AMY KAYE, ATTORNEY
RALPH JOSEPH NOVOTNEY, JR., ATTORNEY

November 17, 2013

Stevie Stevenson
K16324  C1-227L
Centinela State Prison
P.O. Box 921
Imperial, CA 92251-921

Dear Mr. Stevenson:

1

*Police Reports*

4) Copy of the Certified Mail receipt dated 9/13/07 with sent to information for you at Delano. **PLEASE NOTE: I have the original of this mail receipt. Please let me know in writing if you want me to send this to you in prison or if you want to me send it elsewhere.** I know that you do not want this item to get lost.
5) Enclosures sent with your letter dated May 3, 2013

     In addition, enclosed please find those items that were given to me by the District Attorney's Office in response to your Cal. Penal Code section 1054.9 motion. I was in the process of reviewing the items in more detail; however, given your letter to the court, I have ceased my review and am sending them to you. The materials have been redacted pursuant to Cal. Penal Code section 1054.2. Because my office was not appointed to investigate, research, or prepare your habeas petition, I do not know if these materials satisfy the requests you made in your post-conviction discovery motion filed pursuant to Cal. Penal Code section 1054.9. Please let me know if they do. If they do not, please write to me with a detailed list of those items that are outstanding. The items are as follows:

1) LAPD Follow-up Investigation Report – DR 90-0706185 dated 1/23/90 (4 pages)
2) LAPD Arrest Report – Kevin Richardson (3 pages)
3) LAPD Preliminary Investigation Report (2 pages)
4) San Diego Arrest/Juvenile Contact Report (Marked pages 1-38 – missing pages 12, 32, 34, 36, & 38)
5) San Diego Regional Officer's Report Narrative – Statements of Kevin Richardson (Marked Pages 1-4 – missing page 4)
6) San Diego Regional Officer's Report Narrative – Statements of Tracy Gosha (Marked Pages 1-2)
7) LAPD Statement Form – Denise Michelle Manuel (1 page)
8) Consent to Search Premises signed by Tracy Gosha (1 page)
9) San Diego Police Department Vehicle Report (1 page)
10) San Diego Police Department Property Tag No. 501582 – Description of Property (1 page)
11) 1 page typed statement of Latanya Johnson
12) Extradition Request re Stevie Stevenson
13) Reporter's Transcript – Tuesday, March 31, 1992 – Case No. BA011908 – *People v. Stevie J. Stevenson* (57 pages)
14) Information – Case No. BA011908 - *People v. Stevie J. Stevenson* (2 pages)
15) Statement of Melvin Rodriguez (2 pages)
16) LAPD Property Report (1 page)
17) Handwritten Notes (3 pages)
18) LAPD Forensic Print Analysis (2 pages)
19) LAPD Property Report (3 pages)
20) Notice of Motion for Continuance Pursuant to Penal Code section 1050 filed by Attorney Cheroske (3 pages)
21) Notice of Motion for Discovery filed by Attorney Cheroske (9 pages)

22) Information – Case No. BA011908 – *People v. Kevin Christopher Richardson* (2 pages)
23) Felony Complaint – Case No. BA011908 (5 years)
24) Reporter's Transcript – Preliminary Hearing – Thursday, March 22, 1990 - *People v. Kevin Christopher Richardson* (55 pages)

Furthermore, as I noted earlier, the court provided me a copy of your additional request for discovery and progress/status report request under Penal Code Section 1054.9 in which you detail 6 other discovery item requests as follows:

1) Any deals made between Tracey Gosha and the prosecution
2) Any receipts that depicts Tracey Gosha being given money by the prosecution and/or the Detective Larry headwall or Norm Jackson
3) Any and all allegations of misconduct against Detectives Larry Headwall, Norm Jackson or prosecutor Patricia Wilkinson
4) Any and all recorded and written interviews of Tracey Gosha by Detectives Larry Headwell, Norm Jackson, and Patricia Wilkinson
5) Any and all logs of where Tracey Gosha was held, how long she was held and who interviewed her from the San Diego Police Department both detectives and police officers
6) Any and all motions filed by Petitioner's trial attorney John Cheroske before and after trial

The deputy district attorney that was handling your request for post-conviction discovery has retired. I have forwarded a request for these additional 6 items to the deputy district attorney, who has replaced him. *See In re Steele* (2004), 32 Cal.4th 682, 692 (suggesting informal efforts to resolve post-conviction discovery matters pursuant to Cal. Penal Code section 1054.9 be utilized). However, let me ask you with respect to item #3 – are you referring to information in the detectives personnel files? If so, you need to file a separate motion requesting this information pursuant to *Hurd v. Superior Court* (2006), 144 Cal.App.4th 1100. I have enclosed a copy of this case for your review.

Sincerely,

Christa M. Hohmann
Attorney at Law

# EXHIBIT

# #5

DIV. 36

1  JOHN J. CHEROSKE, State Bar #35874
   MORGAN, CHEROSKE & REAMER
2  ATTORNEYS AT LAW
   23505 Crenshaw Boulevard
3  Suite 129
   Torrance, California  90505
4  (213) 325-5141

5  Attorneys for Defendant, STEVIE STEVENSON

6  Time: _____ o'clock _____ M
   Office of the District Attorney

7  By: _____

8  IN THE MUNICIPAL COURT OF THE LOS ANGELES JUDICIAL DISTRICT

9  COUNTY OF LOS ANGELES, STATE OF CALIFORNIA

10

11 PEOPLE OF THE STATE OF            )    Case No. BA011908
   CALIFORNIA,                       )
12                                   )    NOTICE OF MOTION FOR DISCOVERY
                                     )
13                Plaintiff,         )    Date: March 5, 1992
                                     )    Time: 8:30 a.m.
14 vs.                               )    Div : 36  = D.115
                                     )
15 STEVIE STEVENSON,                 )
                                     )    Trish Wilkerson DDA
16                Defendants.        )
                                     )
17 _____)

18 TO:  THE DISTRICT ATTORNEY FOR LOS ANGELES COUNTY, IRA REINER,

19 AND/OR HIS REPRESENTATIVE:

20      **PLEASE TAKE NOTICE** that on the 5th day of March, 1992, at the

21 hour of  8:30 a.m., or as soon thereafter as the matter may be

22 heard in the courtroom of Division 36 of the above-entitled court

23 the  Defendant, STEVIE STEVENSON, will, through his attorney move

24 the above-entitled court for an order of said court directing you

25 to make available to the defendant's attorney for examination,

26 copying or hearing, any and all of the following things, facts or

27 information in possession of either you or any of your deputies,

28 employees or agents:

1

1      1.   Copies of the audio tapes of the telephone taps as are

2 referred to in the police reports and or transcriptions thereof.

3      2.   Copies of the taped interviews of all witnesses including

4 but not limited to Richardson, Gosha and McMath as are referred to

5 in the police reports together with any transcriptions thereof.

6      3.   Copies of any latent lift reports from any vehicles or

7 items retrieved in the investigation as are referred to in the

8 police reports.

9      4.   Copies of all six-pack photo show ups presented to

10 witnesses and the follow up reports dealing therewith.

11      5.   Copies of the Los Angeles Police Department taped

12 interviews of all witnesses including LaTonya Johnson and

13 Richardson.

14 DATED:   February 28, 1992        Respectfully submitted,

15                             MORGAN, CHEROSKE & REAMER

16

17                        BY: _John J. Cheroske_

18                        JOHN J. CHEROSKE
                          Attorney for Defendant,
                          STEVIE STEVENSON

19

20

21

22

23

24

25

26

27

28

## MEMORANDUM OF POINTS AND AUTHORITIES

Under pretrial discovery procedure, it has been held that prior to trial and during the course of the trial, the accused can compel the prosecution to permit inspection and copying or to produce in court any of the following:

**Results of chemical blood test of Defendant**

People v Lowe 285 App. Div. 207 [136 NYS 2d 454]

Pinana v State (1960) 76 Nev. 274 [352 P 2d 824]

**Reports on Victim's Sobriety**

People v Pargo (1966) 241 Cal App 2d 594, 599-600 [50 Cal Rptr 719]; "We think it may be safely said that a witness who is intoxicated by a narcotic at the time of the event as to which he is testifying will be subject to frailties as an observer and narrator equal to those suffered by one drunk from an alcoholic beverage."

"[G]enerally it is proper to permit a goodfaith inquiry made relevant by proper expert testimony as to the effect of narcotic usage upon the testimonial capacity of a witness..."

**Written Statements of the accused.**

Z. v Superior Court (1970) 3 Cal 3d 797, 802 [91 Cal Rptr 594, 478 P 2d 26];  "This court has on several occasions sanctioned the inspection of statements, admissions or recorded conversations of a defendant in a criminal case."

Powell v Superior Court (1957) 48 Cal 2d 704 [312 P 2d 698]

McAllister v Superior Court (1957) 165 Cal App 2d 297 [331 P 2d 654]

3

1    Written Statements of Codefendants

2        Z v Superior Court, supra; "As a general rule, a

3    defendant in a criminal case may, for purposes of impeachment,

4    inspect the statements or recorded conversations of any witness

5    whom the prosecution intends to call at trial. This rule has been

6    extended to include the statements of one's codefendants in a joint

7    trial."

8        People v Arnada (1965) 63 Cal 2d 518, fn 6 [47 Cal Rptr

9    353, 407 P 2d 265]; "As a preliminary to a joint trial, one

10   defendant is entitled to statements made to police by any

11   codefendant."

12       Transcripts of recorded statements of the accused

13       Cash v Superior Court (1959) 53 Cal 2d 72 [346 P 2d 407]

14   Written statements of prosecution witnesses relating to

15   matters covered in their testimony

16       People v Chapman (1959) 52 Cal 2d 95 [338 p 2d 428]

17       People v Silberstein (1958) 159 Cal App 2d 848 [323 P 2d

18   591]

19   Written statements of prosecution witnesses relating to

20   matters covered in testimony at the preliminary hearing

21       Tupper v Superior Court (1958) 51 Cal 2d 263 [331 P 2d

22   977]

23       Fryer v United States 207 F 2d 134

24   Transcripts of tape recordings of statements made by the

25   accused and by prosecution witnesses

26       Powell v Superior Court, supra

27       Powell v Cartier (1959) 51 Cal 2d 590 [335 P 2d 114]

28       Transcripts of statements used by the prosecution in

4

1   impeaching an accused's witness

2       People v Carter (1959) 48 Cal 2d 737 [312 P 2d 665]

3    Notes made by police officers of their conversations with

4   prosecution witnesses

5       Funk v Superior Court (1959) 52 Cal 2d 423 [340 P 2d 665]

6    Statements of Nontestifying Witnesses

7       Vetter v Superior Court (1961) 189 Cal App 2d 132 [137

8   [10 Cal Rptr 890]

9    Letters of Witnesses

10       People v Davis (1971) 20 Cal App 890 [98 Cal Rptr 71];

11  Communications from the office of the District Attorney to

12  prospective witnesses may constitute an attempt to suppress

13  evidence.

14    Third party Suspects

15       People v Guillebeau (1980) 107 Cal App 3d 531 549 [166

16  Cal Rptr 45];  As an established principle, a defendant may show

17  that another person committed the crime and that he himself is

18  innocent."

19    Offers of Leniency

20       People v Allen 1978 77 CAL App 3d 924, 931 [144 Cal Rptr

21  6]

22    Record of Victim to show Aggression

23       Engstrom v Superior Court (1971) 20 cal App 3d 240, 245

24  [97 Cal Rptr 484]

25    Radio Transmissions

26       80 Ops Atty 908 (1981); Tape recordings of radio and

27  telephone calls to the police department and the times of police

28  and ambulance responses are public records within the meaning of

1   Section 6200 of the Government code and may not be destroyed for

2   a least two years.

3       **Physical Evidence**

4       People v Cooper (1960) 53 Cal 2d 755, 770 [3 Cal Rptr

5   148, 349 P 2d 964]; Schindler v Superior Court (1958) 161 Cal App

6   2d 513, 520 [327 P 2d 68]; The defendant is entitled to inspect any

7   physical evidence obtained by the prosecution during the

8   investigation of the case.

9       **Identity of Experts**

10      People v Johnson (1974) 38 Cal App 3d 228, 235 [113 Cal

11  Rptr 303]; "Where it is appropriate, the defendant may discover

12  the reports of the state's experts concerning their examination of

13  real evidence [citation omitted] discovery of identity of state

14  experts is analogous."

15  Photographs that had been exhibited to the victim of the

16  accused's conversation with police officers and of conversations

17  between police officers and the purported victims.

18      Vance v Superior Court (1958) 51 Cal 2d 92 [330 P 2d 773]

19      People v Cartier, supra.

20      **Reports on Lineup**

21      Norton v Superior Court (1959) 173 Cal App 2d 133 [−343

22  P 2d 139]; The defendant is entitled to discover photographs which

23  were exhibited to witnesses for the purpose of identification, in

24  order to attempt to impeach these witnesses at trial.

25      **Identity of Witnesses**

26      People v Morris (1964) 226 Cal App 12, 15 [37 Cal Rptr

27  741]; " A defendant's right to pretrial discovery in a criminal

28  case is well established in California. [Citations omitted]. This

1  right is in accord with the philosophy expressed in <u>People v Riser</u>
2  [cite omitted] that the defendant's right to a fair trial and
3  extends to the manes of the prosecution witnesses..."

4      Absent some governmental requirement that information be kept
5  confidential for the purpose of law enforcement, the State has no
6  interest in denying the accused access to all evidence that can
7  throw light on issues in this case.

8      <u>People v Riser</u> (1956) 47 Cal 2d 566 [305 P 2d 1]

9      The state's obligation is not to convict, but to see that so
10 far as possible, truth emerges.  This is also truly the ultimate
11 statement of its responsibility to provide a fair trial under the
12 Due Process Clause of the Fourteenth Amendment.  No respectable
13 interest of the State is served by its concealment of information
14 which is material, generously conceived, to the case, including all
15 possible defenses.

16     <u>Gales v State of Maryland</u> (1967) 386 U.S. 68 [87 S Ct
17 793]

18     The prosecution has a duty to disclose and produce evidence
19 which might aid the defense.

20     <u>In re Ferguson</u> (1971) 5 Cal 3d 525 [96 Cal Rptr 594, 487
21 P 2d 1234]

22     The prosecution is required to make diligent good faith
23 efforts to obtain and make available to the defense pertinent
24 information possessed by other agencies within the criminal justice
25 system.

26     <u>Engstrom v Superior Court</u> (1971) 20 Cal App 3d 240 [97
27 Cal Rptr 484]

28     The prosecution not only has a duty to disclose evidence

7

1   favorable to the accused (In re Ferguson, supra) but there is also

2   an affirmative duty to eliminate any misunderstanding or mistakes

3   in the minds of defense counsel concerning the state of the

4   evidence.

5           People v Dena (1972) 25 Cal App 3d 1001 [102 Cal Rptr

6   357]

7       In some cases, the prosecution must, without request, disclose

8   substantial material evidence favorable to the accused.

9           People v Campbell (1972) 27 Cal App 3d 849 [104 Cal Rptr

10  118]

11          People v Dena, supra

12      The defense is entitled to the true names and current

13  addresses of informants who may possibly testify favorably on

14  Defendant's behalf, including at the time of the preliminary

15  hearing.

16          Alford v Superior Court (1972) 29 Cal App 3d 724 [105 Cal

17  Rptr 713]

18          People v Holiday (1973) 8 Cal 3d 771 106 Cal Rptr 113,

19  505 P 2d 537]

20          Mitchell v Superior Court (1958) 50 Cal 2d 827 [220 P 2d

21  48]

22

23

24

25

26

27

28

8

1

2                      PROOF OF SERVICE

3  STATE OF CALIFORNIA, COUNTY OF LOS ANGELES

4        I am employed in the county of Los Angeles, State of
   California.  I am over the age of 18 and not a party to the within
5  action; my business address is 23505 Crenshaw Boulevard, Suite 129,
   Torrance, California 90505.

6
        On February 28, 1992, I served the foregoing document
7  described as NOTICE OF MOTION FOR DISCOVERY on interested parties
   in this action

8
   ____  by placing the true copies thereof enclosed in sealed
9  envelopes addressed as stated on the attached mailing list:
   _xx_ by placing ___ the original _xx_ a true copy thereof·enclosed
10 in sealed envelopes addressed as follows:

11              *Tom Willer*
                Deputy District Attorney
12              210 West Temple Street
                Los Angeles, CA  90012

13
   ___BY MAIL as follows:
14       I am "readily familiar" with the firm's practice of collection
   and processing correspondence for mailing.  Under that practice it
15 would be deposited with U.S. postal service on that same day with
   postage thereon fully prepaid at Torrance, California in the
16 ordinary course of business.  I am aware that on motion of the
   party served, service is presumed invalid if postal cancellation
17 date or postage meter date is more than one day after date of
   deposit for mailing in affidavit.
18 _xx_BY PERSONAL SERVICE:
        I delivered such envelope by hand to the office of the
19 addressee.

20       Executed on February 28, 1992 at Torrance, California.

21 _xx_STATE  I declare under penalty of perjury under the laws of the
   State of California that the above is true and correct.
22
   ____FEDERAL I declare that I am employed in the office of a member
23 of the bar of this court at whose direction the service was made.

24              *Louis F. Jones*
25              LOUIS F. JONES

26

27

28

9

# EXHIBIT



Exhibit #5

DECLARATION OF IVY K. KESSEL

I, Ivy K. Kessel declare as follows:

1.  I was the appellate attorney appointed by the California
Court of Appeal to represent appellant Stevie Stevenson in his
direct appeal and related habeas petition in case number B070341.

2.  Between the months of June and August, 1993, and in the
course of preparing Mr. Stevenson's opening brief and original
habeas petition in the Court of Appeal, I made continuous efforts
to contact his trial attorney, John Cheroske, at least one dozen
times.  Upon my first call to Mr. Cheroske's former law office, I
learned that he had been appointed to the bench.  I then called him
in court and left at least five messages with his clerk and
bailiff.  Mr. Cheroske finally called me back after I had left many
messages for him to return my call.

3.  I advised Mr. Cheroske that I needed his trial file for
the Stevenson case at which time he told me it was in storage under
the control of his former law office.  He advised me he would make
arrangements to have his former firm release that file to me.  I
waited and waited and made periodic calls to the law firm of Morgan
& Reamer in Torrance which is the firm Mr. Cheroske told me had the
file.  I was repeatedly told that arrangements have been made to
get the Stevenson file out of storage.

4.  When it became evident to me that I was never going to
acquire Mr. Cheroske's trial file prior to the deadline for filing
appellant's opening brief, I went ahead and filed the opening brief
on August 20, 1993.  I subsequently filed a habeas petition in
November, 1993, raising ineffective assistance of counsel.  Since
I still had not been given Mr. Cheroske's trial file, I was forced
to proceed with affidavits I was able to acquire from various
witnesses without the benefit of reviewing the trial file.

5.  Long after Mr. Stevenson's case was decided by the Court
of Appeal and upon a final plea for Mr. Stevenson's case file, the
law firm of Morgan & Reamer finally sent me the requested file on
or about April 6, 1994, some eight months after I had been
requesting the file.  Since the Court of Appeal had already decided
Mr. Stevenson's case on November 24, 1993, and my appointed
services for Mr. Stevenson had terminated, I immediately sent Mr.
Stevenson Mr. Cheroske's trial file.

6.  I have reviewed portions of Mr. Cheroske's trial file and
have discussed with Mr. Stevenson some matters which I feel show
that Mr. Cheroske did not represent Mr. Stevenson effectively.
Some of these matters are being raised for the first time in Mr.
Stevenson's second habeas petition because the information simply
was not accessible to either him or I prior to April 6, 1994.

///

EXHIBIT #5

I declare under penalty of perjury that the foregoing is true and correct.  Executed this 22nd day of August, 1994 at Encino, California.

IVY A. KESSEL

# EXHIBIT

# #7

1) LAPD Follow-up Investigation Report – DR 90-0706185 dated 1/23/90 (4 pages)
2) LAPD Arrest Report – Kevin Richardson (3 pages)
3) LAPD Preliminary Investigation Report (2 pages)
4) San Diego Arrest Juvenile Contact Report (Marked pages 1-38 – missing pages 12, 32, 34, 36, & 38)
5) San Diego Regional Officer's Report Narrative – Statements of Kevin Richardson (Marked Pages 1-4 – missing page 4)
6) San Diego Regional Officer's Report Narrative – Statements of Tracy Gosha (Marked Pages 1-2)
7) LAPD Statement Form – Denise Michelle Manuel (1 page)
8) Consent to Search Premises signed by Tracy Gosha (1 page)
9) San Diego Police Department Vehicle Report (1 page)
10) San Diego Police Department Property Tag No. 501582 – Description of Property (1 page)

12) Extradition Request re Stevie Stevenson
13) Reporter's Transcript – Tuesday, March 31, 1992 – Case No. BA011908 – *People v. Stevie J. Stevenson* (57 pages)
14) Information – Case No. BA011908 - *People v. Stevie J. Stevenson* (2 pages)

16) LAPD Property Report (1 page)

18) LAPD Forensic Print Analysis (2 pages)
19) LAPD Property Report (3 pages)
20) Notice of Motion for Continuance Pursuant to Penal Code section 1050 filed by Attorney Cheroske (3 pages)
21) Notice of Motion for Discovery filed by Attorney Cheroske (9 pages)

22) Information – Case No. BA011908 – *People v. Kevin Christopher Richardson* (2 pages)
23) Felony Complaint – Case No. BA011908 (5 years)
24) Reporter's Transcript – Preliminary Hearing – Thursday, March 22, 1990 - *People v. Kevin Christopher Richardson* (55 pages)

US v. HEATHERLIE 1990

# EXHIBIT



**Affidavit of Lamont Johnson**

STATE OF CALIFORNIA
COUNTY OF LOS ANGELES

I the undersigned, LAMONT JOHNSON, do hereby swear, certify, and affirm that:

1. I am over the age of 18 and am a resident of the State of California.

2. I am the brother of La Tanya Johnson, a witness who testified for the state in the case of People vs. Stevie Stevenson.

3. On January 19, 1990, I lived at 1843 S. Dunsmuir Ave, Los Angeles, CA with my sister La Tanya, my mother, Step father, as well as my other two sisters and a nephew.

4. My sister was arrested on January 19, 1990 from our family home.

5. On January 20, 1990, the day after my sister LaTanya Johnson was arrested, she and I were having a conversation regarding her physical condition. During our conversation she explained that she had been grabbed by the neck, choked and her head was slammed against our neighbor's metal garage door by the police officers that arrested her. La Tanya also told me that the police arrested our neighbors and friends Donald Manuel, Denise Manuel, and Diane Manuel, La Tanya also stated that Donald Manuel was beaten up very badly by the police.

6. La Tanya stated that while she was at the police station she was drilled for hours by the police for details about a kidnapping that involved her ex-boyfriend Stevie Stevenson.  LaTanya stated that she continuously told the police that she didn't know anything about the kidnapping and despite her telling them she didn't know anything  she was threatened by the police with more physical harm and a life sentence if she didn't tell them what they wanted to hear.

7. La Tanya told me that she was terrified and thought that the police might assault her again so she just agreed with what she was told by the police who interviewed her.

8. A few days after my sister, La Tanya's arrest, Stevie Stevenson came over to my parents' house and asked to speak with my sister LaTanya. I accompanied her outside, and stood by her side as they spoke.

9. I heard Stevie apologizing to my sister saying "I am sorry this happen to you, it wasn't my fault." He stated that "Baby Boy and them lied to me. I would never involve you in anything like this, and I didn't know what was going on." My sister was very angry with Stevie and didn't want to talk to him; she walked away from the yard and went into the house.

10. When my sister went back in the house Stevie asked me to tell my parents that he was sorry for getting La Tanya arrested. Stevie apologized to me and explained that," a guy named "Baby Boy" asked him if he could have some dropped off in LA until he got back from San Diego." Stevie stated that, he called my sister and introduced her to Baby Boy and asked if Baby Boy could have something dropped off. Stevie Said he let Baby Boy speak to my sister.  Stevie said, that he didn't know what Baby Boy was having dropped off to my sister had anything to do with any kidnapping because, had he known there was no way he would have gotten my sister involved.

11. About two years later my sister LaTanya Johnson told me that she had been called to testify against Stevie Stevenson at his trial. LaTanya stated "she testified to what the police instructed her to say happen, because she wasn't going to jail for life for something that Stevie and his friend involved her in."

12. I have personal knowledge of the facts and am willing to testify if called upon.

I, declare under penalty of perjury that the foregoing is true and correct.

Executed this 22nd day of ꟷJꟷanꟷuaꟷryꟷ , 2015.


X _Lamont Johnson_____

Lamont Johnson

SEE CALIFORNIA NOTARY
CERTIFICATE
1-22-2015

**CALIFORNIA JURAT WITH AFFIANT STATEMENT**

GOVERNMENT CODE § 8202

☒ See Attached Document (Notary to cross out lines 1–6 below)
☐ See Statement Below (Lines 1–6 to be completed only by document signer[s], *not* Notary)

_____     _____
*Signature of Document Signer No. 1*        *Signature of Document Signer No. 2 (if any)*

> A notary public or other officer completing this certificate verifies only the identity of the individual who signed the document to which this certificate is attached, and not the truthfulness, accuracy, or validity of that document.

State of California
County of __Los Angeles__

ARDIS JACKSON JR.
Commission # 1996890
Notary Public - California
Los Angeles County
My Comm. Expires Nov 29, 2016

Subscribed and sworn to (or affirmed) before me

on this __22nd__ day of __January__, 20__15__,
            *Date*              *Month*              *Year*

by

(1)__Lamont Jerome Johnson__

(and (2)_____N/A_____),
                  *Name(s) of Signer(s)*

proved to me on the basis of satisfactory evidence
to be the person(s) who appeared before me.

Signature _____

*Signature of Notary Public*

*Seal*
*Place Notary Seal Above*

——————————— **OPTIONAL** ———————————
*Though this section is optional, completing this information can deter alteration of the document or fraudulent reattachment of this form to an unintended document.*

**Description of Attached Document**

Title or Type of Document: __Affidavit of Lamont Johnson__  Document Date: __1-22-2015__

Number of Pages: __2__  Signer(s) Other Than Named Above: __None__

©2014 National Notary Association • www.NationalNotary.org • 1-800-US NOTARY (1-800-876-6827)   Item #5910

# EXHIBIT



1  LAW OFFICES OF RICHARD M. MOORE
   429 Santa Monica Boulevard
2  Suite 630
   Santa Monica, California 90401
3
4  (213) 393-9323
5  Attorneys for Plaintiffs
6
7
8        IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
9            FOR THE COUNTY OF LOS ANGELES
10
11 DONALD MANUEL JR., DENISE        )    CASE NO.   BC002201
   MANUEL, CAROLYNE LAKEY,          )
12 ~~AND LA TANYA JOHNSON~~         )    COMPLAINT FOR:
                                    )    1. ~~ASSAULT AND BATTERY~~
13              Plaintiffs,         )    2. FALSE IMPRISONMENT
                                    )    3. INTENTIONAL INFLICTION
14       vs.                        )       OF EMOTIONAL DISTRESS
                                    )    4. NEGLIGENT INFLICTION
15 CITY OF LOS ANGELES, LOS         )       OF EMOTIONAL DISTRESS
   ANGELES POLICE DEPARTMENT,       )    5. NEGLIGENT EMPLOYMENT
16 DOES 1 THROUGH 50, INCLUSIVE,    )    6. VIOLATION OF 42 U.S.C.
                                    )       SECTION 1983
17              Defendants.         )
   _____)       Case assigned to
18                                           JUDGE HURDELL
19       COMES NOW Plaintiffs, Donald Manuel Jr., Denise Manuel,
20 Carolyne Lakey, and La Tanya Johnson, for cause of action against
21 the Defendants, and each of them, allege as follows:
22                            I.
                    FIRST CAUSE OF ACTION
23                 (ASSAULT AND BATTERY)
24       1.  That Plaintiffs are, and at all times mentioned
25 herein were, residents of the City of Los Angeles, in the County
26 of Los Angeles, State of California.
27       2.  That all of the acts herein complained of occurred
28 in the County of Los Angeles, State of California.

FILED

MAY 10 1990

FRANK S. ZOLIN COUNTY CLERK

C. L. Coleman

BY C.L. COLEMAN  DEPUTY

1   then re-entered her residence.

2       A few minutes later, Plaintiff Donald Manuel, Jr., exited the
3   residence, inspected the box, and re-entered the residence.
4   Approximately five (5) minutes later, Donald Manuel, Jr. exited and
5   walked towards his vehicle parked in front of the residence. At
6   this time, an unidentified officer came from behind him with a
7   shotgun and stated "Freeze, don't move." Donald Manuel, Jr. then
8   placed his hands above his head whereupon the officer hit him in
9   the back of the head and he was thrown against his vehicle.
10  Another officer then put a knee in the middle of his back and
11  pulled his arms back around him and handcuffed him. After being
12  handcuffed, several unidentified officers carried him to a car. As
13  Donald Manuel, Jr. was being placed in the police vehicle, he was
14  turned around and struck in the stomach by an officer. He was then
15  turned back around and thrown onto first the back seat and then the
16  floor of the police vehicle. Donald Manuel, Jr. recalled that
17  there were two (2) white officers, one (1) later identifying
18  himself as Officer Brooks.

19      The officers then drove off with Donald Manuel, Jr. The
20  taller officer, who was sitting in the back seat with Donald
21  Manuel, Jr., struck him a couple of times yelling at him and
22  requesting him to answer questions. After being questioned, the
23  same officer then pulled Donald Manuel, Jr. off of the floor and
24  sat him in an upright position, whereupon he elbowed Plaintiff in
25  the stomach area. The officer then placed a plastic bag over his
26  head so that he could not breathe. The plastic bag was kept on for
27  approximately ten (10) seconds. While the officer was doing this,
28  he kept repeating the same questions and Donald Manuel, Jr. kept

2

1  responding that he did not know.

2      After several minutes of this questioning, the officers

3  returned to Dunsmuir Avenue and took Donald Manuel, Jr. out of the

4  car and walked him to the corner whereupon he saw his sisters,

5  Diane Manuel and Denise Manuel with LaTanya Johnson.   Donald

6  Manuel, Jr. stood on the corner for approximately two (2) minutes

7  whereupon the officers placed him and his sister Diane Manuel in a

8  squad car and took them down to the precinct.

9      At the police station, they separated all of the Plaintiffs,

10  and Donald Manuel, Jr. was again questioned for approximately three

11  to four (3 - 4) hours in regard to the kidnapping.

12      Denise Manuel was in her room at the time of the incident.

13  Earlier in the day Denise Manuel had received a telephone call from

14  Plaintiff LaTanya Johnson asking her if there was a box outside of

15  her home, Denise went to the front of her house and looked out the

16  window.   She returned to the telephone and told LaTanya that the

17  box was out there.   At that time, LaTanya requested her to pick up

18  the box and place it on her porch, which she did.

19      Subsequent thereto, she heard her brother Donald leave the

20  house.   A few seconds later Donald re-entered the house and came

21  into her room and asked whose box was on the porch.   She responded

22  that it belonged to LaTanya.

23      Several minutes had elapsed when she heard loud noises and

24  yelling outside.   Denise and her sister Diane Manuel went to the

25  front door and opened it.   At that time, some unidentified men told

26  them to come down the stairs with their hands up.   As Denise Manuel

27  descended the stairs, an officer wearing glasses frisked her and

28  then handcuffed her.   Denise was then thrown onto the cement.   At

3

1   this time, the officer pushed her head to the right as her sister

2   Diane Manuel was being frisked and handcuffed and also thrown onto

3   the ground.    During this time, Denise Manuel was questioned as to

4   her name and telephone number.   She was also questioned as to

5   whether anyone else was in the house.

6       Denise was then yanked up by the handcuffs and dragged down

7   the street by an officer that was described as thin and wearing

8   glasses.    During the officer's questioning of her, she was

9   continually told that she was going to the "gas chamber" and that

10  she should cooperate, the officers also used obscenities towards

11  her.

12      Denise was held at this location for approximately thirty to

13  forty-five (30 - 45) minutes when she noticed that five to seven (5

14  - 7) men had gone into her house and were searching the residence.

15      Upon arrival at the police station, she had been seated for

16  approximately one (1) hour without being interrogated.   During the

17  questioning, she was asked in regard to her relationship with

18  Stevie Stevenson, wherein she responded that LaTanya and Stevie had

19  been boyfriend and girlfriend and knew each other from high school,

20  however she had not seen Stevie since May of 1989.

21      Denise was questioned for approximately three to four (3 - 4)

22  hours prior to her release.

23      LaTanya Johnson was at her home in the afternoon when she

24  received a telephone call from Stevie Stevenson asking her to place

25  a cardboard box outside the Manuels' residence.   After placing the

26  box at that location, LaTanya returned to her home.   Several hours

27  later, LaTanya went outside and noticed that there were a large

28  amount of cars outside of the Manuel residence.   LaTanya telephoned

4

1   Denise and told her to look out her window.  As LaTanya was looking

2   out the window, she observed Donald Manuel, Jr. coming outside to

3   his car, whereupon several officers descended upon him.

4   Thereafter, LaTanya observed Diane Manuel coming out of the

5   residence.

6       At this time, LaTanya ran out of her home down the street

7   towards the Manuel residence.  There she observed Diane Manuel and

8   Denise lying face down and handcuffed on the cement.

9       The officers then told LaTanya to go back to her residence,

10  and upon her return she telephoned her mother, Carolyn Lakey.

11  After her telephone conversation, two (2) plainclothes officers

12  approached a window and told LaTanya to come outside.

13      LaTanya was grabbed by three (3) officers that walked her into

14  her driveway.  One (1) officer questioned her with profane language

15  and intimated her to tell the whereabouts of the victim and

16  kidnappers.  At this time, one (1) officer grabbed her by the neck

17  and attempt she slammed up against her neighbor's metal garage

18  door.  Throughout this entire time, the officers used profane and

19  abusive language in regard to questioning her.

20      Plaintiff was then lead down the street and placed in a police

21  vehicle and taken down to the station.  She was questioned for

22  several hours, and then released.

23      After Carolyn Lakey received the telephone call from her

24  daughter LaTanya, she left her place of business and drove home.

25  Carolyn was unable to go home, as the police had blocked off

26  Dunsmuir Avenue.  Upon her arrival, she noticed approximately seven

27  (7) police officers and another fifteen (15) people in the

28  vicinity.  Carolyn stood there approximately twenty (20) minutes

5

1   asking other neighbors and the police what had occurred, and was

2   told there was a hostage situation. At this time, Carolyn observed

3   that the Manuel front door was open and that the garage door was

4   partially torn off.

5       Approximately twenty (20) minutes later, Plaintiff observed

6   the officers bring a handcuffed Diane Manuel down the street and

7   after frisking her, placed her in a police vehicle. Approximately

8   two to three (2 - 3) minutes later, other officers brought Denise

9   Manuel down the street, also handcuffed, frisked her and placed her

10   in a police vehicle. Donald Manuel, Jr. was also brought down the

11   hill in the same manner. Several minutes elapsed when Carolyn

12   observed LaTanya being brought down the hill also handcuffed.

13   Carolyn observed that Diane Manuel appeared to be quite shaken and

14   that she seemed to have been physically man-handled. Carolyn also

15   observed that Donald appeared to have been roughed-up as one side

16   of his face appeared red and his shirt was soiled. Carolyn also

17   observed that LaTanya was wearing her pajamas and that she also

18   looked roughed-up.

19       Prior to LaTanya being placed in a police vehicle, Carolyn was

20   able to move through the crowd and speak to her, as she was

21   concerned regarding her grandson, Kenny, as he was in the house

22   with LaTanya. Kenny had become so frightened by the police that

23   after LaTanya had been placed in custody, he had ran back into the

24   house and had become so frightened that he had soiled himself.

25       Thereafter Carolyn was allowed to go to her home, whereupon

26   she observed that the officers had broken into her locked room and

27   basically ransacked her entire home.

28   //

## II.

### STATEMENT OF THE CASE

On or about January 19, 1990, a kidnapping for ransom had occurred. One of the kidnappers, a Stevie Stevenson, contacted Plaintiff LaTanya Johnson and requested her to place a box outside of the Manuel residence. At that time, the Robbery Homicide Division of the Los Angeles Police Department had intervened and staked out the Manuel residence.

The officers observed Denise Manuel exit her residence and place the cardboard box onto her porch. After the officers observed Donald Manuel, Jr. exit the residence and walk to his vehicle, they arrested him and secured the residence, and were instructed to await S.W.A.T.

The officers then ordered Denise and Diane Manuel to exit the residence whereupon they were detained, interrogated, and then placed under arrest. The officers then proceeded to ransack the Manuel residence. During this time, the officers identified LaTanya Johnson as a possible kidnapper, whereupon they ordered LaTanya Johnson out of her residence, and arrested her. Subsequently thereto, they entered this residence owned by Plaintiff Carolyn Lakey and proceeded to ransack that residence.

After interrogating the Plaintiffs and making their on-location search, it was determined that the Plaintiffs were not involved in the kidnapping, and the victim was not at either location. Detective Norman Jackson surmised that the Manuels had been duped into picking up the ransom by the actual kidnappers. Jackson decided not to book the Manuels and to use their statements as witnesses against other Defendants.

7

1       On or about February 12, 1990, Plaintiffs presented a claim to

2   Defendant City of Los Angeles by mailing a claim to the City Clerk

3   of the City of Los Angeles.  Defendant City of Los Angeles rejected

4   said claim by letter to Plaintiffs dated April 11, 1990.

5       On or about May 30, 1990, Plaintiffs filed a complaint for: 1)

6   Assault and Battery; 2) False Imprisonment; 3) Intentional

7   Infliction of Emotional Distress; 4) Negligent Infliction of

8   Emotional Distress; 5) Negligent Employment; and 6) Violation of 42

9   U.S.C. Section 1983.

10      On or about July 12, 1990, the City filed an answer to said

11  complaint.

12      On or about May 22, 1991, the two cases, one filed by

13  Plaintiffs Donald Manuel, Jr., Denise Manuel, Carolyn Lakey, and La

14  Tanya Johnson, was consolidated with the case filed by Diane

15  Manuel.

16      On or about July 8, 1992, the arbitrator awarded the

17  following: 1) Donald Manuel, Jr. - $34,000.00; 2) Denise Manuel -

18  $17,394.00; 3) Carolyn Lakey - $26,000.00; 4) LaTanya Johnson -

19  $17,000.00; and 5) Diane Manuel - $25,000.00.  On or about July 16,

20  1992, Defendant filed a Request for Trial De Novo.

21                            III.

22                    SPECIAL DAMAGES

23  **Donald Manuel, Jr.:**

24      1.   Donald Manuel, Jr. sustained injuries to his neck, the

25  back of his head, mouth, and facial lacerations.  He underwent

26  surgery to his mouth.  Implants were placed in his mouth during a

27  three month process.  The two front teeth were removed and replaced

28  by false teeth.  A root canal on the bottom tooth, which was

1   chipped, was performed.   Once the root canal was performed, he

2   proceeded to have the bottom tooth crowned.

3        Donald Manuel, Jr. also underwent physical therapy.

4   **Medical Damages:**

5        1.   Southgate Dental Group          $ 3,675.00

6        2.   Hawthorne Doctors Group          $ 2,026.00

7   **Property Damage:**

8        3.   West Coast Paint and Body Shop   $   147.04

9                                 TOTAL:       $ 5,848.04

10  **Denise Manuel:**

11       Denise Manuel sustained injuries to her wrist, entire back,

12  neck, and developed recurring headaches.   She received physical

13  therapy.

14  **Medical Damages:**

15       1.   Hawthorne Doctors Group          $2,630.00

16       2.   Medical Incidentals              $    8.55

17  **Property Damage:**

18       3.   Clothing Damage                  $  158.99

19       4.   Wright and Associates            $1,500.00
              (Property damage to house)

20
         5.   Residence Clean-up               $  496.00
21
                                 TOTAL:        $4,793.54
22

23  **LaTanya Johnson:**

24       LaTanya received injuries to her neck, back, knee, and wrists.

25  She underwent physical therapy.

    **Medical Damages:**
26

27       1.   Hawthorne Doctors Group                   $2,240.00

28  //

                                   9

Property Damage:

| | | |
|---|---|---|
| 2. | Gold earrings | $   150.00 |
| 3. | Shirt | $    54.00 |
| 4. | Pants | $    60.00 |
| 5. | Gold bracelet | $   130.00 |
| 6. | Miscellaneous Property Damage | $   194.00 |
| | TOTAL: | $3,028.00 |

**Carolyn Lakey:**

Carolyn stated that she a had pain and discomfort in her right foot as well as pain in her neck and back.  She received physical therapy.

**Medical Damages:**

| | | |
|---|---|---|
| 1. | Hawthorne Doctors Group | $1,850.00 |

**Property Damage:**

| | | |
|---|---|---|
| 2. | Back gate replacement | $   500.00 |
| 3. | Garage door | $   500.00 |
| 4. | Replacement of linoleum tiles | $   250.00 |
| 5. | Replacement of bedroom door | $   400.00 |
| 6. | Replacement of closet door | $   450.00 |
| 7. | Replacement of entire bedroom set | $2,500.00 |
| 8. | Repair of vacuum | $   150.00 |
| 9. | Damaged fabric | $   350.00 |
| 10. | Replacement of bedroom curtain rods | $    80.00 |
| 11. | Replacement of wallpaper | $   350.00 |
| 12. | Dry cleaning bill | $   250.00 |
| 13. | Restaining of back door | $   100.00 |
| 14. | Replacement of white area rug | $   100.00 |
| 15. | Labor for cleaning of residence | $   500.00 |

10

# EXHIBIT





# SUPERIOR COURT

### COUNTY OF LOS ANGELES, STATE OF CALIFORNIA

## WARNING! -- READ THIS! -- YOU COULD BE SENT TO PRISON!

NOT REMOVE, DAMAGE OR CONCEAL THIS FILE, OR CHANGE OR TAKE ANYTHING
OF IT, OR TAKE IT APART FOR ANY REASON. IF YOU DO, YOU ARE GUILTY OF
ERIOUS CRIME, AND COULD BE SENT TO STATE PRISON. (SECTION 6200 AND
OF THE CALIFORNIA GOVERNMENT CODE)

CLOSED



## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DIANE MAGHIL,

      Plaintiff,

vs.

CITY OF LOS ANGELES, ET AL.,

      Defendants.

CASE NUMBER

### CERTIFICATE OF ASSIGNMENT

All civil actions or proceedings presented for filing must be accompanied by this certificate.

The undersigned declares that the above entitled matter is filed for proceedings in the ___CENTRAL___
District of the Los Angeles Superior Court under Section 392 et seq., Code of Civil Procedure and Rule 300
Sections 3 and 4 of this court for the reasons checked below.

The address of the accident, performance, party, detention, place of business, or other factor which qualifies this
case for filing in the above designated district is:

The false arrest and beating occurred at: 1861 Longcrest

(NAME - INDICATE TITLE OR OTHER QUALIFYING FACTOR)            ADDRESS

LOS ANGELES,                     CALIFORNIA                   90010

(CITY)                           (STATE)                      (ZIP CODE)

| | NATURE OF ACTION | GROUND |
|---|---|---|
| 1 | Abandonment | Petitioner resides within the district |
| 2 | Adoption | Petitioner resides within the district |
| 3 | Adoption | Consent to out of state adoption, consentor resides within the district |
| 4 | Appeal from Labor Commission Decision | Labor hearing was held within the district |
| 5 | Conservator | Petitioner or conservatee resides within the district |
| 6 | Contract | Performance in the district is expressly provided for |
| 7 | Equity | The cause of action arose within the district |
| 8 | Eminent Domain | The property is located within the district |
| 9 | Family Law | One or more of the party litigants resides within the district |
| 10 | Forcible Entry | The property is located within the district |
| 11 | Guardianship | Petitioner or ward resides within the district |
| 12 | Habeas Corpus | No action pending, the person is held within the district |
| 13 | Mandate* | The defendant functions wholly within the district |
| 14 | Name Change | The petitioner resides within the district |
| 15 | Personal Property | The property is located within the district |
| 16 | Probate | Decedent resided or pet:tioner resides within the district |
| 17 | Prohibition* | The defendant functions wholly within the district |
| 18 | Review* | The defendant functions wholly within the district |
| 19 | Small Claims Appeal | The lower court is located within the district |
| 20 | Title to Real Property | The property is located within the district |
| x 21 | Tort | The cause of action arose within the district |
| 22 | Tort | One or more defendant(s) reside within the district |
| 23 | Transferred Action | The lower court is located within the district |
| 24 | Unlawful Detainer | The property is located within the district |

I declare under penalty of perjury under the laws of the State of California that the foregoing is true and correct
and this declaration was executed on _____ at _____, California

THE COURT MAY IMPOSE SANCTIONS OR OTHER PENALTIES
FOR A FAILURE TO FILE IN THE PROPER DISTRICT.

SIGNATURE OF ATTORNEY/PARTY

*Prerogative writ proceedings - Mandate, Prohibition and Review - must be filed at the Central District.

79C104
MC05 M1 87

CERTIFICATE OF ASSIGNMENT

1

KELVIN D. FILER
ATTORNEY AT LAW
353 W. COMPTON BOULEVARD
COMPTON, CALIFORNIA 90220
TELEPHONE (213) 637-8252
637-8268

2

3

4

5   ATTORNEY FOR  Claimant- DIANE MANUEL

6

7

8                    CLAIM AGAINST A PUBLIC ENTITY

9

10

11   DIANE MANUEL,                        )
                                          )
12            Claimant,                    )      CLAIM FOR DAMAGES FOR ASSAULT
                                          )      AND BATTERY, FALSE ARREST
13   vs.                                   )
                                          )      (Gov't Code §§ 905 et seq.)
14                                         )
     LOS ANGELES POLICE DEPARTMENT,        )
15   CITY OF LOS ANGELES,                  )
     DOES, 1 through 100, Inclusive        )
16                                         )
              Respondents.                 )
17                                         )
                                          )
18   ───────────────────────────────

19            TO: LOS ANGELES POLICE DEPARTMENT and
                  CITY OF LOS ANGELES:

20

21        This claim is presented on  behalf of DIANE MANUEL

22   whose post office address is: 1861 Dunsmuir Avenue

                                    Los Angeles, California 90019

23

24        All notices respecting this claim should be sent to

25   his attorney:  KELVIN D. FILER
                    353 West Compton Boulevard
26                  Compton, California 90226

27                  TELEPHONE: (213) 637-8252
                               637-8268

28

The date and place of the assault on claimant which gave rise to this claim are:  January 19th, 1990 at or near:  1861 Dunsmuir, Los Angeles, California, in front of the residence and on the sidewalk.

Claimant was in her house when Los Angeles Police Officers, surrounded the house and ordered claimant out and handcuffed her.  Claimant, while handcuffed, was beaten with nightsticks and dragged on the concrete sidewalk by Los Angeles Police Officers.

Claimant was later taken to the police station and interrogated for five or more hours.  Claimant was called foul names and berated while at the Police Station.

Since the beating, claimant has a bruise on her cheek and abrasions on other parts of her body.

Claimant was falsely arrested and beaten while residing in her home.

Claimant has been injured as a result of the assault in an amount greater than $1,000,000.00 dollars as of the filing of this claim.

Claimants injuries are:

1.  General Damages -  $1,000,000.00;

2.  Special Damages -  Amount to be determined.

Dated:  May 17, 1990

KELVIN D. FILER

Attorney for Claimant

KELVIN D. FILER
ATTORNEY AT LAW
361 W. COMPTON BOULEVARD
COMPTON, CALIFORNIA 90220
TELEPHONE (213) 637-8252
637-8268

```
 1
 2
 3
 4
 5   ATTORNEY FOR Plaintiff-DIANE MANUEL
 6
 7
 8                  SUPERIOR COURT OF CALIFORNIA
 9                     COUNTY OF LOS ANGELES
10
11   DIANE MANUEL,
12               Plaintiff,
13        vs.
14   CITY OF LOS ANGELES,
     LOS ANGELES POLICE DEPARTMENT,
15   DOES, 1 through 100, Inclusive.
16
17               Defendants.
18
19        Plaintiff DIANE MANUEL alleges as follows:
20                  FIRST CAUSE OF ACTION
21
22
23
24
25
26
27
28
```

KELVIN D. FILER
ATTORNEY AT LAW
COMPTON, CALIFORNIA
TELEPHONE

**FILED**

CASE NO. BC020272

1  damages as herein alleged were proximately caused by such defend-
2  ants.

3  2.  At all times herein mentioned plaintiff was and now
4  is a resident of the State of California, County of Los Angeles.

5  3.  Defendants, DOE Officers Nos. 1 to 100, now are and
6  were at all times herein mentioned employees and agents of Los
7  Angeles City.

8  4.  Defendant CITY OF LOS ANGELES ("CITY") is now and was
9  at all times herein mentioned a political subdivision of the State
10 of California, and defendant LOS ANGELES POLICE DEPARTMENT
11 ("DEPARTMENT") is now, and at all times herein mentioned was, a
12 department of the CITY.

13 5.  Plaintiff is informed and believes and thereon alleges
14 that at all times herein mentioned each of the defendants was the
15 agent and employee of each of the remaining defendants and in
16 doing the things hereinafter alleged, was acting within the course
17 and scope of such agency.

18 6.  On May 17, 1990, plaintiff presented a claim for damages
19 to the CITY OF LOS ANGELES pursuant to Government Code Section
20 910 et seq., and in substantial compliance therewith.  Said claim
21 was based on the acts, omissions, events and allegations herein
22 described and complained of. Exhibit "A"

23 7.  Said claim was denied by defendant CITY and a notice of
24 the limitation provisions of Government Code Section 945.6 was
25 mailed to plaintiff by defendant CITY on or about 11-91-90, 1990.
                                                    Exhibit "B"
26 8.  Defendants, DOES 1 through 100, inclusive, were law
27 enforcement officers for the City of Los Angeles and in doing all
28 of the things hereinafter alleged, acted under color of state

-2-

1    authority as such, and under color of the statutes, regulations,

2    customs and usages of the State of California, the CITY of Los

3    Angeles and pursuant to the official policy of defendant CITY as

4    created by defendant CITY of Los Angeles, acting under color of

5    his authority as such. Los Angeles City has a City policy or

6    custom that officers, all employees or independent agents, must

7    follow in arresting and restraining persons. This "manual" was

8    drawn up by the Los Angeles Police Department and distributed to

9    all police officers who were required to read them before starting

10    work for Los Angeles City Police Department.

11      9. At about 5:00 p.m. on January 19, 1990 at 1861 Dunsmuir

12    Avenue, Los Angeles, California, plaintiff's house was surrounded

13    by police officers of the City of Los Angeles. Plaintiff was ordered

14    out of her house; handcuffed by Los Angeles police officers; beat

15    with night sticks by Los Angeles police officers while handcuffed,

16    and dragged on the concrete sidewalk by Los Angeles Police officers.

17      10. Plaintiff was taken to Police Headquarters and interro-

18    gated for five or six hours. Defendants DOES 1 through 5 Los

19    Angeles Police Officers later admitted they made a mistake in

20    arresting plaintiff.

21      The actions of the police officers involved herein,

22    were taken under the color of law. They had on official police

23    type uniforms, handcuffed plaintiff and took her to a Los Angeles

24    City Jail. The conduct caused a deprivation of plaintiff's right

25    and the conduct was the consequences of a Los Angeles City policy

26    or custom as outlined in a manual prepared by Los Angeles City

27    officials.

28      11. Plaintiff was not informed of why she was booked and

KELVIN D. FILER
ATTORNEY AT LAW
161 W. COMPTON BOULEVARD
COMPTON, CALIFORNIA 90220
TELEPHONE (213) 637-8352
637-8308

-5-

1  arrested until after the few hours of detentive interrogation,

2  Plaintiff was then informed that the Los Angeles Police Department

3  thought she was involved in some type of kidnapping for ransom.

4      12.  By reason of defendants' conduct, plaintiff was deprived

5  of rights, privileges and immunities secured to her by the

6  Constitution of the United States and laws enacted thereunder and

7  by the Constitution of the United States and laws enacted there-

8  under and by the constitution and laws of the State of California

9  in that the conduct of defendants was unauthorized and illegal and

10  amounted to an arbitrary intrusion by defendants into the security

11  of plaintiff, her privacy and person, and that the contacts on

12  plaintiff's person, restrictions of her movements, deprived

13  plaintiff of life and liberty without due process of law.

14      13.  In doing all of the things herein mentioned all of the

15  named defendants and the DOE DEFENDANTS deprived plaintiff of

16  rights, privileges, and should have known of these rights,

17  privileges and immunities and that their conduct violated these

18  rights, privileges and immunities to cause injury to plaintiff.

19      14.  As a result of the deprivations of her rights, plaintiff

20  sustained bruises and abrasions, otherwise was injured, subjected

21  to humiliation and indignity, and suffered great mental and

22  physical pain and suffering and distress, all to her damage in a

23  sum according to proof, and lost wages according to proof.

24      15.  Defendants did the things herein with oppression and

25  malice.  Plaintiff is entitled to exemplary and punitive damages

26  according to proof.

27      16.  Plaintiff is entitled to have defendants pay her attorney

28  fees pursuant to Section 1988 of title 42 of the United States Code,

-4-

KELVIN D. FILER
ATTORNEY AT LAW
161W COMPTON BOULEVARD
COMPTON, CALIFORNIA 90220
TELEPHONE (213) 637-8252
637-8268

KELVIN D. FILER
ATTORNEY AT LAW
961 W. COMPTON BOULEVARD
COMPTON, CALIFORNIA 90220
TELEPHONE (310) 637-8252
637-8268

(SECOND CAUSE OF ACTION)

(Battery)

1. Reincorporates and realleges as if set out in full at this point, each and every allegation contained in paragraphs 1, 2, 3, 4, 5, 6, 7, 8, 9, 10, 11, 12, 13, 14, 15, and 16 of the FIRST CAUSE OF ACTION of Plaintiff herein verbatim.

2. While acting under color of title of State law and as an Officer of the defendant, CITY OF LOS ANGELES, in line of duty, the defendant designated as officers DOES 1 through 5, uniformed officers, did then and there intentionally, wilfully, maliciously, wrongfully, and without cause, justification, provocation and while the plaintiff did, then and there, have her hands held tightly and behind her, and while the plaintiff was totally defenseless, did viciously hit, kick, strike and beat the plaintiff with a billy club, thereby causing the plaintiff severe personal injury. All of said outrageous acts were committed with the intent to inflict serious emotional harm, serious physical injury on the plaintiff.

3. As a proximate result of said wilful, malicious, oppressive and wrongful conduct, plaintiff was caused to suffer great emotional anxiety, trauma, fear and intense physical pain and suffering in that as a result of the damages inflicted by the defendant officers DOES 1 through 5, plaintiff was proximately caused to bleed.

4. By reason of the fact that the damages above referred to were incurred as a result of the malicious, oppressive and wilfully unreasonable conduct of defendants, officers DOES 1 through 5, which was ratified by all DOE defendant officers,

-6-

# EXHIBIT



```
 1 │ Law Offices of Richard M. Moore        F I L E D
   │ 429 Santa Monica Boulevard
 2 │ Suite 600
   │ Santa Monica, California 90401         FEB 1 1 1993
 3 │
   │ (310) 393-9323
 4 │                                        R. Johnson
 5 │ Attorneys for Plaintiffs Donald Manuel, Jr., Denise Manuel, Carolyn
   │ Lakey, and LaTanya Johnson
 6 │
 7 │
 8 │
 9 │
   │        IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
10 │
   │            FOR THE COUNTY OF LOS ANGELES
11 │
12 │ DONALD MANUEL, JR., et al.,  )    CASE NO. BC 002201
   │                              )    Consolidated with BC020272
13 │              Plaintiffs,     )
   │                              )    EXHIBIT LIST
14 │        vs.                   )
   │                              )    ASSIGNED TO JUDGE HUBBELL
15 │ CITY OF LOS ANGELES, et al., )
   │                              )    TRIAL DATE:    2/22/93
16 │              Defendants.     )    TIME:          8:30 A.M.
   │ ─────────────────────────────)    DEPT:          21
17 │
   │      Thereupon all parties having met and conferred wish to lodge
18 │ the following documents as Exhibits:
19 │
   │     1.   Medical report and itemized statement from Hawthorne
20 │
   │          Doctors Group regarding Donald Manuel, Jr.;
21 │
22 │     2.   Medical report and billing from Southgate Dental Group
   │          regarding Donald Manuel, Jr.;
23 │
   │     3.   Three (3) photographs depicting Plaintiff Donald Manuel,
24 │
   │          Jr.'s physical injuries;
25 │
26 │     4.   Repair bill from West Coast Paint and Body Shop;
   │
27 │     5.   Medical report and itemized statement from Hawthorne
   │          Doctors Group regarding Denise Manuel;
28 │
```

1

6. Invoice for garage door repair from Wright and Associates;

7. Itemized list of property damage repair and clean-up;

8. Nineteen (19) photographs depicting property damage at 1861 Dunsmuir Avenue;

9. Medical report of Claremont College Student Health Services regarding Diane Manuel;

10. Medical report and itemized statement from Hawthorne Doctors Group regarding LaTanya Johnson;

11. Itemized billing of property damage from Plaintiff LaTanya Johnson;

12. Medical report and itemized statement from Hawthorne Doctors Group regarding Carolyn Lakey;

13. Itemized billing for property damage from Plaintiff Carolyn Lakey;

14. Ten (10) photographs depicting property damage at 1843 Dunsmuir Avenue;

15. Deposition transcript of Donald Manuel, Jr., taken on July 15, 1991;

16. Deposition transcript of Denise Manuel, taken June 11, 1991;

17. Deposition transcript of Carolyn Sue Lakey, taken on June 12, 1991;

18. Deposition transcript of LaTanya Johnson, taken on November 26, 1991;

19. Deposition transcript of Diane Manuel, taken on June 26, 1991; and

//

2

1    20.   Los Angeles Police Department personnel complaint, IA

2          #90-469M.

3  DATED: FEBRUARY 8  , 1993              LAW OFFICES OF

4                                         RICHARD M. MOORE

5

6

7                                    _Richard M. Moore_

8                                    By  Richard  M.  Moore,  Esq.,
                                     Attorneys for Plaintiffs Donald
9                                    Manuel,   Jr.,   Denise  Manuel,
                                     Carolyn   Lakey,   and   LaTanya
10                                   Johnson

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

                                     3

# EXHIBIT



**FILED**

FEB 1 1 1993

JAMES H. DEMPSEY, CLERK

*L. Gutierrez*

BY L. JIMENEZ DEPUTY

1  Law Offices of Richard M. Moore
2  429 Santa Monica Boulevard
   Suite 100
3  Santa Monica, California  90401
   (310) 393-9323
4
   Attorneys for Donald Manuel, Jr., Denise Manuel, LaTanya
5  Johnson and Carolyn Lakey.
6
7
8          IN THE SUPERIOR COURT OF THE STATE OF CALIFORNIA
9              FOR THE COUNTY OF LOS ANGELES
10
11                                    ]  CASE NO.:  BC002201
                                      ]  consolidated with
12                                    ]  CASE NO.:  BC020272
   DONALD MANUEL, JR., et. al.,       ]
13                                    ]  PLAINTIFFS' WITNESS LIST
          Plaintiffs                  ]
14                                    ]  ASSIGNED     TO     JUDGE
                                      ]  RICHARD C. HUBBEL
15          versus                    ]  STATUS  CONFERENCE  DATE:
                                      ]  JANUARY 12, 1993
16                                    ]  TIME:  8:30 a.m.
   CITY OF LOS ANGELES, et. al.,      ]  DEPARTMENT:  21
17                                    ]  TRIAL DATE:  FEBRUARY 22,
          Defendants.                 ]  1993
18                                    ]
19  ─────────────────────────────────]
20
21       COMES NOW PLAINTIFFS and lists all witnesses who will be
22  called at trial, along with a short factual synopsis of their
23  testimony.
24       1.   Donald Manuel, Jr.: Mr. Manuel will testify
25  in the regard to his actions and the facts that
26  took place on January 19, 1990, at his residence
27  on Dunsmuir Avenue in Los Angeles including his
28  conduct and actions by his vehicle which led to

him being assaulted, battered, falsely imprisoned and having his rights violated pursuant to 42 U.S.C. Section 1983 and the emotional distress as a result therefrom. Mr. Manuel will also describe the nature and extent of his injuries, medical treatment, and damages he sustained.

2. Denise Manuel: Ms. Manuel will testify as to the events that occurred on January 19, 1990, at her residence on Dunsmuir Avenue in the City of Los Angeles. Ms. Manuel will testify in regard to the facts which led up to her being assaulted, battered, falsely imprisoned and violation of her rights pursuant to 42 U.S.C. Section 1983 which resulted in emotional distress. Ms. Manuel will also testify as to the extent of her physical injuries, treatment therefor, and other damages. Ms. Manuel will also testify as to the extent of the property damage to the residence.

3. LaTanya Johnson: Ms. Johnson will testify as to the events that occurred on January 19, 1990 in regard to her being assaulted, battered, falsely imprisoned, and having her rights violated under 42 U.S.C. Section 1983, which resulted in emotional distress. Ms. Johnson will also testify as to the extent of her physical damages and treatment therefor.

4.   Carolyn Lakey: Ms. Lakey will testify as to the events that occurred on January 19, 1990, in regard to the events on Dunsmuir Avenue, Los Angeles.  Ms. Lakey will testify as to what she observed occurring to the other plaintiffs in this action, including her rights being violated under 42 U.S.C. Section 1983, which resulted in emotional distress.  Ms. Lakey will also testify as to the extent of physical damage and property damage to her residence.

5.   Mark Anfangar: Mr. Anfangar will testify as to the events he observed on January 19, 1990 from his residence at 1852 South Dunsmuir Avenue, Los Angeles.  Mr. Anfangar observed an officer punch Donald Manuel in the face and observed the officers as they placed Donald under arrest.

Plaintiffs will also call the officers involved in the incident.  These officers will testify as to the events that occurred on January 19, 1990 and their participation in those events.  The officers are listed as follows:

1.   Detective Brian Davis;

2.   Detective Jerry Brooks;

3.   Detective John Helms;

4.   Detective Richard Spelman;

5.   Detective John Fruge;

6.   Detective Charles Bennett;  and

7.   Detective Norman Jackson.

Plaintiffs estimate of time for direct examination is three (3) days.

DATED:   January 10, 1993   LAW OFFICES OF RICHARD M. MOORE


RICHARD M. MOORE
Attorney for Plaintiffs

JAMES K. HAHN, City Attorney
THOMAS C. HOKINSON, Senior Assistant City Attorney
ROBERT J. PULONE, Deputy City Attorney
1700 City Hall East
200 North Main Street
Los Angeles, California  90012
Telephone:  (213) 485-0733

Attorneys for Defendant
CITY OF LOS ANGELES

# FILED

JAN 1 2 1993

JOHN R. DRAPER, CLERK

*L. Gonzalez*

BY L. GONZALEZ, DEPUTY

SUPERIOR COURT OF CALIFORNIA

COUNTY OF LOS ANGELES

| | |
|---|---|
| DONALD MANUEL, JR., et al., | No.  BC 002 201 |
| Plaintiffs, | (Consolidated with BC 020 272) |
| vs. | DEFENDANTS' WITNESS LIST FOR TRIAL |
| CITY OF LOS ANGELES, et al., | STATUS CONFERENCE: |
| Defendants. | Janaury 12, 1993 |

TRIAL DATE: February 22, 1993
TIME:  9:30 A.M.
DEPT:  21

TO ALL PARTIES AND TO THEIR ATTORNEYS OF RECORD HEREIN:

Defendant, CITY OF LOS ANGELES, contemplate introducing the following witnesses during the trial of this case.  Defendants reserve the right to call additional witnesses:

1. John Fruge: Percipient witness, 1 hour direct testimony

2. Brian Davis:  Percipient witness, 1 hour direct testimony

3. Rick Spellman: Percipient witness, 1 hour direct testimony

4. John Helms:  Percipient witness, 1 hour direct testimony

5. Norm Jackson:  Percipient witness, 1 hour direct testimony

6. Jerry Brooks:  Percipient witness, 1 hour direct testimony

CA 146

1

7. Ernie Haleck: Percipient witness, 1 hour direct testimony

8. Pete Weiretr: Percipient witness, 1 hour direct testimony

9. Charles Bennet: Percipient witness, 1 hour direct testimony

10. Gary Zerbey: Percipient witness, 1 hour direct testimony

11. Richard Zlerenberg: Percipient witness, 1 hour direct testimony

12. Clarence Chapman: Expert witness, 1 hour direct testimony

13. Terry McGee: Expert witness, 1 hour direct testimony

14. Melvin Rodriguez: Victim, 1 hour direct testimony

DATED: January 11, 1993

        JAMES K. HAHN, City Attorney
        THOMAS C. HOKINSON, Senior Assistant City Attorney
        ROBERT J. PULONE, Deputy City Attorney

By_____

        ROBERT J. PULONE
        Deputy City Attorney

        Attorneys for Defendant
        CITY OF LOS ANGELES

CA 146

2



# SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

DATE: 03/01/93                                                DEPT. 39

HONORABLE RICHARD C HUBBELL                    JUDGE    L Jimenez        DEPUTY CLERK
                                                        E Leon/Ct Asst

HONORABLE                              JUDGE PRO TEM
9
        G Mack       CSL          Deputy Sheriff  Shara Chavez        Reporter

9:00 am  BC002201                                Plaintiff
         DONALD MANUEL, JR., ET AL              Counsel
         VS
         CITY OF LOS ANGELES, ETC.              Defendant
                                                Counsel
         sent to arbit.  2-26-92
         CASE C/W BC020272

NATURE OF PROCEEDINGS:

CIVIL JURY TRIAL DE NOVO AFTER ARBITRATION  PI PD AO

Trial resumes from February 25, 1993 with all jurors,
plaintiffs and counsel present as heretofore.

Larry Winston, Clarence Robert Chapman and Terence
Sean McGee are sworn and testify for the Defendant.

Defendant's exhibits I and J (each a photograph), , K
(LaTanya report), L (Denise report), M (Carolyn report
N (questions) and O (answers) are admitted into
evidence pursuant to stipulation of all counsel.

LaTanya Johnson and Carolyn Lakey, previously sworn,
is recalled and examined by the defendant pursuant to
Section 776 of the Evidence Code.

Defendant rests.

Donald Manuel and Denise Manuel, previously sworn,
are recalled by the plaintiff on rebuttal phase.

Plaintiff rests on rebuttal.  Surrebuttal not offered.

OUT OF THE PRESENCE OF THE JURY

# EXHIBIT





*NOTICE TO ARBITRATORS*

In order that your award may be entered by our Judgment Section, PLEASE CLEARLY SHOW THE FULL NAMES OF THE PARTIES FOR WHOM AND AGAINST WHOM THE JUDGMENT IS RENDERED. Please make a disposition as to all parties and cross-complaints (should there be one) in the action.

All money awards should be clearly set forth. It must be clear to anyone reading the judgment to whom that sum is due and from whom.

RECEIVED

JUL 1 0 1992

...ABILITY SECTION

## SUPERIOR COURT OF CALIFORNIA, COUNTY OF LOS ANGELES

Donald Manuel Jr., et al.,

Plaintiff(s),

vs.

City of Los Angeles

Defendant(s).

| CASE NUMBER |
| --- |
| BC 002201 Consolidated with case Number BC 20272 |

**AWARD OF ARBITRATOR**
**SECTION 1141.10 C.C.P.**

The undersigned arbitrator appointed pursuant to the provisions of Section 1141.10 of the Code of Civil Procedure and Rule 1605 California Rules of Court, having been duly sworn and having heard the cause on ___June 30,___ , 19 _1992_ , and having considered the evidence of the parties, awards in full settlement of all claims submitted to arbitration as follows:

Judgment for plaintiff Donald Manuel Jr., against defendant City of Los Angeles, in the amount of $34,000.00;

Judgment for plaintiff Denise Manuel against defendant City of Los Angeles in the amount of $17,394.00;

Judgment for plaintiff Carolyne Lakey against defendant City of Los Angeles in the amount of $26,000.00;

Judgment for plaintiff La Tanya Johnson against defendant City of Los Angeles in the amount of $17,000.00;

Judgment for plaintiff Diane Manuel against defendant City of Los Angeles in the amount of $25,000.00.

Total $119,394

☒ Costs are awarded to _plaintiff per cost bill to be_ submitted in the sum of $ _____

DATED: ___July 8, 1992___

_____
ARBITRATOR

**NOTE:** Counsel are reminded that when this award is entered it operates as a final judgment of the matter. Therefore, when appropriate, a Satisfaction of Judgment should be filed with the clerk of the court.

CASE NO.

BC002 201
Cons. w/ BC020 272

Donald Manuel A, et al, vs City of LA, et al

ARBITRATION WAS HELD ON

June 30, 1992

AWARD WAS FILED ON

July 10, 1992

TRIAL DE NOVO
WAS REQUESTED ON

July 16, 1992

S/c 7/31/92

767616D
FC95/1 87